Bruce A. WALDON, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 79A02–0401–CR–35.

Court of Appeals of Indiana.

June 14, 2005.

Rehearing Denied Sept. 16, 2005.

Kevin R. O'Reilly, Lafayette, for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, J.

Bruce A. Waldon appeals from his convictions for five counts of Burglary as Class C felonies;[1] five counts of Theft as Class D felonies;[2] one count of Corrupt Business Influence, a Class C felony;[3] three counts of Conspiracy to Commit Burglary as Class C felonies;[4] and three counts of Contributing to the Delinquency of a Minor, Class A misdemeanors.[5] In addition, he was found to be an habitual offender.[6] He presents several issues for our review which we restate as:

I. Whether the trial court committed error when it denied his motion for severance of many of the charges;

II. Whether there was sufficient evidence to support Waldon's conviction for Corrupt Business Influence;

III. Whether the prosecutor committed misconduct;

IV. Whether some convictions violate double jeopardy; and

V. Whether his sentence is valid.

We affirm the convictions but remand for resentencing.

During the summer of 2002, Waldon recruited the assistance of three juveniles: D.A., S.K., and his son, J.W. Waldon, S.K., and occasionally J.W. would break and gain entry into businesses in the Lafayette area by prying around the locks on their doors with a screwdriver. Once inside, they would search for cash but would take other property, such as hair care products, when it was available. While they were inside, D.A., who served as the driver, would act as a lookout and communicate with the others via walkie-talkie. After leaving the businesses, Waldon would divide the proceeds, and D.A. would take him home.

After some investigation, Waldon and his associates became suspects in the crimes. The police approached D.A. and asked him to allow them to put a GPS tracking device on his car and for him to wear a wire when the group went out. D.A. agreed. On May 29, 2002, D.A. informed the police that he, Waldon, and S.K. would be going out that night. Officers followed D.A.'s car that night as the three made their way to Carroll County

1. Ind.Code § 35–43–2–1 (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–43–4–2 (Burns Code Ed. Repl.2004).

3. Ind.Code § 35–45–6–2 (Burns Code Ed. Repl.2004).

4. Ind.Code § 35–41–5–2 (Burns Code Ed. Repl.2004); I.C. § 35–43–2–1.

5. Ind.Code § 35–46–1–8 (Burns Code Ed. Repl.2004).

6. Ind.Code § 35–50–2–8 (Burns Code Ed. Repl.2004).

where they attempted to commit burglaries of two businesses. Upon returning to Tippecanoe County, officers stopped the vehicle and the occupants were taken into custody. Waldon was then tried for multiple crimes alleged to have been committed by him and his cohorts.

I

*Motion to Sever*

Two or more offenses may be joined in the same indictment or information when the offenses are (1) of the same or similar character, even if not part of a single scheme or plan, or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. Ind.Code § 35–34–1–9 (Burns Code Ed. Repl.1998). If two or more offenses are joined for a trial in the same indictment or information solely upon the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. Ind.Code § 35–34–1–11 (Burns Code Ed. Repl.1998). *See also Ben–Yisrayl v. State,* 690 N.E.2d 1141, 1145 (Ind.1997), *cert. denied* 525 U.S. 1108, 119 S.Ct. 877, 142 L.Ed.2d 777 (1999). In all other cases, upon motion to the trial court, the court shall grant a severance whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense. I.C. § 35–34–1–11; *Ben–Yisrayl,* 690 N.E.2d at 1145. In so doing, the trial court is to consider (1) the number of offenses charged, (2) the complexity of the evidence to be offered, and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. I.C. § 35–34–1–11; *Ben–Yisrayl,* 690 N.E.2d at 1145.

Waldon asserts that the trial court erred in denying his motion to sever several of the counts for trial. Waldon's request was that seven trials be held, with each trial limited to charges which related to the alleged crimes committed on a single day. His basis for seeking severance was that the offenses had been joined because they were of the same or similar character. The State responded by asserting that the evidence of all of the crimes would necessarily have to be presented in order to support the charge of Corrupt Business Influence. Furthermore, the State alleged that the crimes were part of a single scheme or plan to burglarize businesses and the crimes were distinctive in nature. The trial court denied the motion to sever upon the ground that the evidence was admissible in order to prove the charge of Corrupt Business Influence.

Upon appeal, the parties focus upon whether the offenses were only of the same or similar character or whether they were part of a single scheme or plan. In *Ben–Yisrayl, supra,* our Supreme Court reviewed the facts of the case before it and determined that the crimes for which the defendant was charged had the same modus operandi. 690 N.E.2d at 1145. Both shootings involved victims who were clerks and were killed at their place of employment while working between the hours of 6:00 p.m. and 8:00 p.m. The assailant in both shootings drove a white Nissan Sentra. The cash registers were emptied in both crimes, and the victims were shot in the head at close range with a .12 gauge shotgun. The crimes were committed in the same city, two days apart, and the motive was robbery. Consequently, the Court held that the facts were sufficient to show a series of acts connected together and were not joined solely because they were of the same or similar character. *Id.* at 1146. Thus, severance was not mandated as a matter of right and was a matter within the trial court's discretion, taking

into account the three factors listed in I.C. § 35–34–1–11(a)(1)–(3). *Id.*

In *Brown v. State,* 650 N.E.2d 304 (Ind. 1995), the defendant was charged with seven separate counts, three stemming from acts committed on July 1 and the remaining for acts committed on July 2. The defendant requested that the charges be tried separately based upon the days they were committed. The Supreme Court held that the charges "were not joined because of any perceived similarities in the nature of the crimes but because all crimes occurred during the course of a two-day crime spree." *Id.* at 305. The Court then stated that it would "reverse the judgment and order new, separate trials if the defendant [could] 'show that in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court abused its discretion in refusing to grant his motion for severance.' " *Id.* at 306. The Court then held that the acts constituted an uninterrupted transaction and as such would be admissible under the rule of *res gestae* at both trials if separate trials had been held. *Id.*[7] Thus, there was no prejudice in the denial of the motion to sever. *Id.*

In *Harvey v. State,* 719 N.E.2d 406 (Ind. Ct.App.1999), this court reviewed a trial court's decision to deny a motion to sever the offenses stemming from two robberies. The robberies took place at approximately the same time of day in the same part of Indianapolis between Ditch Road and Michigan Road on West 86th Street. They occurred four days apart. The suspects in both cases were two black males, one very tall and the other fairly short. The larger suspect wielded a handgun in both crimes and physically manipulated the victims while the smaller suspect, Har-

vey, assisted. In both instances, the larger suspect pistol-whipped the victim after emptying the cash register. This court noted that while some of these similarities are inherent in many robberies, the facts were sufficient to show a " 'series of acts connected together" ' induced by a common motive to rob. *Id.* at 409. Thus, the defendant was not entitled to severance as a matter of right. *Id.*

■ In determining whether the trial court abused its discretion in denying the motion to sever, this court noted the principle that the decision is within the discretion of the trial court and will be upheld absent a showing of clear error. *Id.* To show that the trial court abused its discretion, the defendant must demonstrate in light of what actually occurred at trial that the denial of a separate trial subjected him to prejudice. *Id.* The court then held that because Harvey was acquitted of all charges stemming from the first robbery, the jury was able to distinguish the evidence and apply the law intelligently to each offense. *Id.* at 409–10. Additionally, the acquittal of charges from one joined offense makes the misjoinder unavailable for reversal of the judgment. *Id.* at 410. Consequently, the trial court did not abuse its discretion by denying the motion to sever. *Id.*

■ In the case before us, Waldon and his juvenile accomplices would meet around 10:30 or 11:00 p.m. to burglarize businesses in Lafayette. Waldon and at least one other juvenile would break into a business while another individual would wait in the vehicle for them to return. In almost every case, Waldon used a screwdriver to pry the doors to businesses open and then would enter the business and

---

7. The so-called doctrine of *res gestae* no longer exists. Admissibility of such evidence is now governed solely by Ind. Rule of Evidence

401. *Swanson v. State,* 666 N.E.2d 397 (Ind. 1996.)

take money. If no money was available, they would take other things such as hair care products. They would also communicate via walkie-talkies. Additionally, the burglaries were committed within the span of a few days. From this evidence, we conclude that the episodes of criminal conduct were more than just of the same or similar character. Rather, the actions show a series of acts which constitute parts of a single scheme or plan with the motive to steal money. Consequently, severance was not available as a matter of right but instead was a matter within the discretion of the trial court.

Waldon argues that he initially faced forty counts, thirty-seven of which went to trial. He asserts that the evidence was complex because it was largely circumstantial. Additionally, he opines that it would be impossible for the jury to consider the evidence for any one charge without reference to the numerous other offenses for which the jury heard evidence. Nonetheless, the outcome of the trial does not support his contentions. The fact is that of the charges relating to the burglaries, thefts, and attempted burglaries, the jury found him guilty of less than half of the crimes. Specifically, the jury found him guilty of charges relating to five of the fifteen businesses he was alleged to have burglarized. The jury was unable to reach a verdict on the remaining charges, a mistrial was declared, and the charges were eventually dismissed. Thus, we fail to see how Waldon could have been prejudiced by the denial of his motion for severance when the jury was able to distinguish the evidence and apply the law to each offense.

## II

### Corrupt Business Influence

Our standard of review for a sufficiency of the evidence claim is well settled. We do not reweigh the evidence or judge the credibility of the witnesses. *Kien v. State,* 782 N.E.2d 398, 407 (Ind.Ct.App.2003), *trans. denied.* We consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* Reasonable doubt is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. *Id.*

Waldon asserts that the evidence does not support the finding that he was engaged in the crime of Corrupt Business Influence. Indiana Code § 35–45–6–2 states, "A person . . . (3)[w]ho is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity commits corrupt business influence." An "enterprise" is defined as "(1) a sole proprietorship, corporation, limited liability company, partnership, business trust, or governmental entity; or (2) a union, an association, or a group, whether a legal entity or merely associated in fact." Ind.Code § 35–45–6–1 (Burns Code Ed. Repl.2004). " 'Pattern of racketeering activity' means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents." *Id.*

Waldon specifically asserts that there is no evidence that a distinct group existed for purpose of being an enterprise. He also asserts that there is no evidence of a pattern of racketeering activity because

there was no evidence of any future planning and the offenses occurred within the space of less than a month.

Little has been written in Indiana upon the definition of an "enterprise" for purpose of prosecution under the charge of Corrupt Business Influence. The cases that do exist upon the charge of Corrupt Business Influence shed little light upon whether Waldon and his accomplices qualify as an "enterprise." Indiana's statute is patterned after the federal Racketeer Influenced and Corrupt Organization Act ("RICO"). *Kollar v. State,* 556 N.E.2d 936, 940 (Ind.Ct.App.1990), *trans. denied.* Consequently, Waldon has turned to federal cases for support of his argument.

In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the United States Supreme Court discussed the elements which must be proved in order to convict an individual under RICO. It stated:

> "In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.' The enterprise is an ·entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeer-

ing activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government." *Id.* at 583, 101 S.Ct. 2524. (citations omitted).

■ The Federal Circuit Courts of Appeal have drafted various methods to determine whether an enterprise exists for purpose of prosecution under RICO. In *Stephens, Inc. v. Geldermann, Inc.,* 962 F.2d 808, 815 (8th Cir.1992), the 8th Circuit Court of Appeals stated that the essential characteristics of an enterprise under RICO include: " '(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering." ' The Seventh Circuit Court of Appeals has made a less formalistic statement of the rule and noted that " '[i]f the enterprise is just a name for the crimes the defendants committed, or for their agreement to commit these crimes that was charged separately in the conspiracy count, then it would not be an enterprise within the meaning of the statute. Otherwise two statutory elements—enterprise and pattern—would be collapsed into one.' " *United States v. Rogers,* 89 F.3d 1326, 1337 (7th Cir.1996) (quoting *United States v. Masters,* 924 F.2d 1362, 1367 (7th Cir. 1991), *cert. denied* 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 105), *cert. denied* 519 U.S. 999, 117 S.Ct. 495, 136 L.Ed.2d 387 (citations omitted). Furthermore, the hallmark of an enterprise is structure. *Id.* A RICO enterprise is an ongoing group of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. *Id.*

■ Waldon specifically asserts that no distinct group exists which is independent

of the pattern of racketeering. While the evidence did not reveal that an elaborate organization existed by which Waldon and his associates would conduct their activities, enough evidence exists to conclude that Waldon was the ringleader of a group of individuals organized to carry out crime. Waldon came up with the original idea to commit burglaries and obtained J.W., D.A., and S.K. to join him. The group would drive around and look for places to break into. Waldon would then mention the places that he wanted to hit. The group would then break into the buildings, with Waldon spearheading both the breaking and the thefts. Upon leaving the buildings, Waldon would divide up the cash and give some to D.A. and S.K.[8] However, from the evidence it appears that Waldon would keep the lion's share of the cash and also kept any stolen items which were not cash. Throughout, their purpose was to steal. This evidence is sufficient to support a finding that Waldon was engaged in an enterprise.

 We now turn to Waldon's assertion that the evidence was insufficient to support a conclusion that he engaged in a pattern of racketeering activity because of the lack of criminal activity projected into the future. As stated above, a pattern of racketeering activity requires at least two predicate acts. I.C. § 35–45–6–1. Additionally, the acts must be related and pose a threat of continued criminal activity. *Kollar*, 556 N.E.2d at 940–41. In *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the United States Supreme Court discussed the continuity requirement and noted prior cases discussing it as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by

its nature projects into the future with a threat of repetition." To establish closed-ended continuity, a party must prove a series of related predicate acts over a substantial period of time. *Id.* at 242, 109 S.Ct. 2893. Predicate acts which extend over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Id.* When an action is brought before continuity can be established in this way, open-ended continuity must be shown. *Id.* This is established by showing a threat of continuity. *Id.*

In this case, Waldon and his cohorts were apprehended before the crime spree could cover a substantial period of time. Nonetheless, the facts that it extended for a short time and there was no direct evidence of planning for future crimes are not fatal. The pattern which was developing shows regular, almost daily, attempts at burglary. The testimony from trial reveals a plan for ongoing criminal activity as once the conduct was set in motion, it only took a phone call to organize the group and get them into action. From this evidence, the jury could infer that the crimes were to continue into the future.

## III

### *Prosecutorial Misconduct*

Waldon next asserts that the prosecutor committed misconduct by informing the jury during the opening statement that certain evidence would be admitted during the trial while knowing that the witness who was to testify with regard to that evidence did not intend to testify. Specifically, the prosecutor informed the jury that they would hear evidence about crimes in which Waldon was alleged to have participated in Clinton County. However, the witness who was to testify

---

8. J.W. testified that his father gave him money when he needed it and did not pay him

directly after the burglaries in which he took part.

about those crimes, David Cudworth, refused to testify at trial, even after being granted use-immunity. As a consequence of Cudworth's refusal to testify, the State was unable to present any evidence of the Clinton County burglaries, and Cudworth was found to be in contempt of the court.

 In reviewing a claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct; and (2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Donnegan v. State*, 809 N.E.2d 966, 972 (Ind.Ct.App.2004), *trans. denied.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the misconduct. *Id.*

In *Brown v. State*, 671 N.E.2d 401, 405 (Ind.1996), our Supreme Court reaffirmed the rule of law that it is reversible error to permit a co-defendant or accomplice to take the stand and refuse to testify when the party calling that witness knows that the individual would refuse to testify. However, the Court concluded that no error occurred in that case because the court and the parties did not know in advance that the witness would refuse to testify. *Id.*

 Here, while the transcript supports Waldon's contention that the State was aware prior to the trial that Cudworth had indicated that he may refuse to testify, there is nothing in the record to lead us to

conclude that the prosecutor knew with any certainty that Cudworth would refuse to testify, especially when granted use-immunity. More importantly, Cudworth changed his mind and offered to testify near the end of trial; however, by that time, the State had rested its case and the charges against Waldon which mentioned the alleged crimes in Clinton County had been amended to remove reference to Cudworth and Clinton County.

 Even were we to hold that the prosecutor engaged in misconduct, no reasonable conclusion can be drawn that Waldon was placed in a position of grave peril. Evidence of the crimes in Clinton County were not necessary to the finding that Waldon was guilty of Corrupt Business Influence. The number of crimes in both Tippecanoe and Carroll County are sufficient to support the conviction. Moreover, just as found in Part I, *supra*, the jury was able to critique the voluminous amount of evidence presented and make findings of guilt only upon charges which it believed were actually proven. Consequently, Waldon is not entitled to a new trial based upon the prosecutor's comments during opening argument.

## IV

### *Double Jeopardy*

Waldon contends that several of his convictions violate the prohibition against double jeopardy. Specifically, he challenges his convictions for contributing to the delinquency of a minor, burglary, and theft,[9]

9. Waldon notes that the informations for the charge of contributing to the delinquency of a minor with respect to D.A. and S.K. were amended on June 4, 2003 to state that he encouraged, aided, induced, or caused them to commit an act of delinquency, *attempted burglary and/or criminal mischief,* rather than the crimes of *burglary, theft, and/or criminal mischief* as originally charged. He further

notes that the jury was instructed on the original charges and not upon the amended charges. Our review of the record, although limited by the failure to include all of the jury instructions in the appendix, reveals that the jury was indeed instructed that it had to find that D.A. and S.K. committed acts that would be burglary, theft, and/or criminal mischief. This is in two separate instructions, one list-

as well as his convictions for conspiracy to commit burglary and burglary.

In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), our Supreme Court established a two-part test for analyzing double jeopardy claims. Specifically, it held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* Waldon challenges his convictions solely under the actual evidence test.

 In a challenge under the actual evidence test, the appellant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish essential elements of one offense may have also been used to establish essential elements of a second challenged offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002); *Richardson*, 717 N.E.2d at 53; *Alexander v. State*, 768 N.E.2d 971, 976 (Ind.Ct.App.2002) (deducing that our Supreme Court has consistently overturned convictions upon double jeopardy grounds where the evidentiary facts establishing *an* essential element of one offense establish *all* of the essential elements of the second challenged offense), *affirmed on reh'g* 772 N.E.2d 476, *trans. denied*. In applying the actual evidence test, the reviewing court must identify the essential elements of each offense and evaluate the evidence from the jury's perspective. *Spivey*, 761 N.E.2d at 832. In our review, we consider the jury instructions where rele-

vant, the arguments of counsel, and other factors which may have guided the jury's determination. *Id.*

Indiana Code § 35–46–1–8 states that a "person at least eighteen (18) years of age who knowingly or intentionally encourages, aids, induces, or causes a person less than eighteen (18) years of age to commit an act of delinquency (as defined by IC 31–37–1 or IC 31–37–2) commits contributing to delinquency, a Class A misdemeanor." Burglary is defined as the "break[ing] and enter[ing] the building or structure of another person, with intent to commit a felony in it." I.C. § 35–43–2–1. "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." I.C. § 35–43–4–2. Finally, an individual commits criminal mischief if he "recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent." Ind.Code § 35–43–1–2 (Burns Code Ed. Repl.2004).

 We have already noted the inadequacy of the record presented by Waldon in supporting his appeal. Nowhere is this more evident than in the failure to include the jury instructions. Without the jury instructions, our ability to determine whether the jury was properly focused upon certain evidence in order to avoid double jeopardy is virtually impossible. However, it is Waldon's burden to support his claims, and we will address the merits of his argument to the best of our ability given what he has provided. *See Blanchard v. State*, 802 N.E.2d 14, 28–29 (Ind.Ct.

ing the charge as it would appear in a charging information and the other more detailed, breaking the charges down into separate elements.

Waldon makes no argument with respect to the potentially erroneous instructions. Rath-

er, both he and the State focus their argument upon double jeopardy with respect to burglary and theft. Thus, we will not *sua sponte* create issues with respect to the instructions and amended changes, and we limit our review to the issue as presented by Waldon.

App.2004) (appellant has the burden of presenting both a cognizable argument and the appropriate portions of the record to establish the error and waives a detailed consideration of the issues if he fails in carrying that burden). In that regard, because no challenge was made to the instruction of the jury, we may reasonably presume that the jury was properly instructed so that double jeopardy would be avoided.

In challenging his convictions for contributing to the delinquency of a minor, Waldon makes the assumption that he was convicted of the respective burglaries and thefts because he aided, induced, or caused the juveniles to commit the crimes. However, his argument fails to focus upon the actual evidence that was available to the jury. Waldon himself performed many of the tasks, including breaking into the buildings and taking items from within the businesses. These facts establish the elements of the burglary and theft charges against Waldon. The jury need not have relied upon a single act performed by any of the juveniles in order to find Waldon guilty of burglary and theft.

Only when the jury turned to the alleged crimes of contributing to the delinquency of a minor did they need to focus upon any of the evidence of delinquent acts by the juveniles. While Waldon did indeed induce the juveniles to take part in the crimes, their activities were distinct and separate from Waldon's.[10] S.K. himself performed many of the same tasks as Waldon. Specifically, he would enter the buildings and remove items of value, just

as Waldon did. S.K. also maintained communication with D.A. through the use of walkie-talkies. D.A. was the driver for each burglary and acted as a lookout, relaying information to S.K. and Waldon as needed. J.W. only took part in a couple of the burglaries, and according to S.K., J.W. entered at least one of the hair care businesses they burglarized. These facts establish the elements of the delinquent acts of burglary, theft, and/or criminal mischief committed by each of the juveniles. Thus, facts which establish the delinquent acts committed by the juveniles for the purpose of convicting Waldon for the contributing of the delinquency of a minor are different than those used to establish the elements of the burglary and theft charges against Waldon. Consequently, the prohibition against double jeopardy was not violated by Waldon's convictions for burglary, theft, and contributing to the delinquency of a minor.

Waldon's claim that his convictions for conspiracy to commit burglary and burglary violate double jeopardy also is without merit. A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. I.C. § 35–41–5–2. Furthermore, the State must allege and prove that one of the individuals who agreed to commit a crime performed an overt act in furtherance of the agreement. *Id.*

Each charging information for the crimes of conspiracy, as well as the instructions on the charges, alleged as overt

---

10. An aspect of Waldon's argument is that he could have been found guilty of burglary and theft through accomplice liability. Indiana Code § 35–41–2–4 (Burns Code Ed. Repl. 2004) states that a "person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." Be that as it may, Waldon was not charged with the crimes of burglary and theft through accomplice liability, and there is no evidence that the jury was told or instructed that Waldon could be found guilty in such manner. Consequently, this argument does not support a determination of double jeopardy.

acts that Waldon and the juveniles met for the purpose of committing burglaries, D.A. drove them to the locations to be burglarized, Waldon, S.K., and/or J.W. broke and entered the buildings, Waldon, S.K., and/or J.W. removed property from the businesses, D.A. drove them from the scene of the burglaries, and Waldon paid S.K. and D.A. proceeds from the thefts. Waldon asserts that there is a reasonable possibility that once the jury determined that he committed the crimes of conspiracy, the jury did not find any additional evidence in order to convict him of the burglary. However, this argument is without merit because the conspiracy was proved by the evidence from D.A. and S.K. that the group met for the purpose of committing burglaries and drove around looking for businesses to burglarize. The jury did not have to rely upon any actual evidence of the breaking and entering of any businesses to find Waldon guilty of conspiracy. Thus, the prohibition against double jeopardy was not violated by the convictions for conspiracy to commit burglary and burglary. *See also Guyton v. State,* 771 N.E.2d 1141, 1143 (Ind.2002) (one of the long adhered to series of rules of statutory construction and common law prohibits conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished).

## V

### *Sentencing*

Waldon also asserts that his sentence violates the rule of law explicitly announced in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* In *Blakely,* the United States Supreme Court applied the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which stated, " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." ' 124 S.Ct. at 2536. Relying upon this principle, the Court held that the sentencing scheme at issue in *Blakely* violated the petitioner's Sixth Amendment right to a trial by jury. *Id.* at 2543.

Waldon argues that his Sixth Amendment right to a trial by jury was violated because the trial court made findings which should have been made by a jury in enhancing Waldon's sentence. Here, the trial court found five aggravating factors in enhancing Waldon's sentence: (1) his criminal record, (2) the risk he will commit another crime, (3) the nature and circumstances of the crime, (4) Waldon's character, and (5) that Waldon continued the crimes although he believed he was under surveillance.

■ As stated in *Blakely,* the trial court could rely upon Waldon's prior convictions—his criminal record—without any additional findings by a jury. *See id.* at 2536. Waldon does not dispute this fact but does contest the weight of this aggravator. At the sentencing hearing, Waldon's counsel, in discussing Waldon's criminal history, informed the court that the criminal history consisted of two misdemeanors,[11] the felonies which served as the bases for the habitual offender finding, and eight cases that were dismissed.[12] The

---

11. Waldon's counsel stated that the two offenses occurred in 1987 and 1990, and that one was a Class A misdemeanor theft, the other a Class B misdemeanor mischief.

12. The pre-sentence investigation report was not included in the appendix so the informa-

cases which were dismissed could not be relied upon by the trial court because they were not prior convictions which had been found by a jury or admitted to by the defendant. *See id.* at 2536–37, 2541. *Abney v. State*, 822 N.E.2d 260 (Ind.Ct.App. 2005), *trans. denied.*

The appropriate weight to place upon the actual convictions which remain is not clear. The felonies which supported the habitual offender finding could not standing alone be relied upon as the aggravating factor of a prior criminal record to enhance the sentence. *See McVey v. State*, 531 N.E.2d 458, 461 (Ind.1988) (stating that the use of a firearm which elevated the charge to a Class B robbery and two previous felonies which supported the habitual offender finding could not standing alone be the aggravating circumstances used to justify an enhanced sentence); *Darnell v. State*, 435 N.E.2d 250, 256 (Ind.1982) (it is proper for a trial court to enhance a sentence upon consideration of a defendant's criminal history when the trial court considers more than just the prior felonies used in the habitual offender

count). *But see Jones v. State*, 600 N.E.2d 544, 548 (Ind.1992) (holding that it is permissible for a trial court to consider the same prior offenses for both enhancement of the instant offense and to establish habitual offender status).[13] What the court is left with are the felonies used to support the habitual offender status and two misdemeanor convictions. Prior convictions may be considered to have significant weight, although this is not necessarily so. *See Westmoreland v. State*, 787 N.E.2d 1005, 1010 (Ind.Ct.App.2003) (stating that significance varies based upon the gravity, nature, and number of the prior offenses as they relate to the current offense); *see also Traylor v. State*, 817 N.E.2d 611, 622 (Ind.Ct.App.2004) (discussing several cases which held that prior misdemeanor convictions were not significant aggravating factors), *reh'g denied.* Given that the trial court appears to have relied upon Waldon's entire criminal history, including dismissed charges,[14] we cannot say with confidence that the court would weigh this aggravating factor the same with the proper considerations.[15]

tion before us on this issue comes solely from counsel's statement.

13. The facts in *Jones* do not reveal if Jones had convictions other then those used to establish his habitual offender status. In stating that the trial court could rely upon the same felonies for habitual offender status and to enhance the offense, the Court cited to *Criss v. State*, 512 N.E.2d 858 (1987). In *Criss*, the Court stated, "It is not error for a court to use the same prior offenses for both enhancement of the instant offense and to establish a status as an habitual offender." *Id.* at 860. However, in *Criss*, the Court noted that the defendant had prior convictions of rape, armed robbery, burglary, robbery, confinement and two counts of second degree burglary. *Id.* The *Criss* Court, in turn, cited to *Darnell, supra.* As noted above, the holding in *Darnell* was based upon the fact that the trial court, in enhancing the sentence, relied upon the fact

of more convictions than just the prior felonies used in the habitual offender count. 435 N.E.2d at 256. Whether *Criss* and *Jones* have altered the law so that a trial court may rely solely upon the felonies which support a habitual offender enhancement to also enhance a sentence because of criminal history is unclear. Nonetheless, we need not resolve that issue because of the availability of misdemeanor convictions in the case before us.

14. If Waldon has more convictions of which we are not aware because of the condition of the record before us, this decision is not meant to preclude the trial court's reliance upon those convictions.

15. It is the responsibility of the trial court to determine the appropriate weight to accord aggravating and mitigating factors. *Meadows v. State*, 785 N.E.2d 1112, 1129 (Ind.Ct.App. 2003), *trans. denied.*

■ We now turn to the aggravating factor of the risk that Waldon would commit another crime. The voice of this court, the author of this opinion included, has been that the use of this aggravating factor does not violate *Blakely* when it is "derivative" of the criminal record. *See, e.g., Carson v. State*, 813 N.E.2d 1187, 1189 (Ind.Ct.App.2004) (holding that the likelihood that the defendant would commit battery again was a proper aggravating factor because the trial court based its decision upon the defendant's criminal history), *reh'g denied.*

In the case before us, the trial court relied upon the fact that "the defendant's life since before he was an adult has been one long crime spree interrupted only by periods of imprisonment" to find that Waldon was likely to commit another crime. Tr. at 1199. This finding is based upon Waldon's criminal record; thus, we would hold that its use does not violate *Blakely* if we were to apply the logic which has been applied by this court in prior cases. Nonetheless, this case has forced us to reevaluate that position. The premise of the holding in *Blakely*—that it is constitutional for trial courts to consider prior convictions because they have been found by a jury— is that the convictions have been proved beyond a reasonable doubt.[16] 124 S.Ct. at 2536. Thus, logic might indicate that it is not improper to consider aggravating factors, such as the risk that an individual will commit another crime or needs rehabilitation best provided by incarceration, when they are based upon convictions found by a jury. However, that the inferences drawn from those prior convictions by the trial court are based upon facts found by the jury. is not equivalent to saying that the aggravating factors themselves have been *found by a jury beyond a reasonable doubt.* Indeed, the trial court is required to make an inference based upon the prior convictions of a *risk* or *likelihood* that something may happen in the future. This can hardly be considered to be a finding beyond a reasonable doubt.[17] Consequently, to the extent that prior cases from this court hold otherwise, we disagree with them. *See, e.g., Berry v. State*, 819 N.E.2d 443 (Ind.Ct.App.2004), *trans. denied; Holden v. State*, 815 N.E.2d 1049 (Ind.Ct.App. 2004), *trans. denied; Carson*, 813 N.E.2d at 1189.

■ The trial court also relied upon the nature and circumstances of the crime. Its discussion of this aggravating factor revealed the basis of the aggravator: (1) the lengthy and multiple offenses, (2) no care was taken to minimize harm and there was some gratuitous destruction, (3) that he was corrupting young people, and (4) the numerous charges. The fact that there were lengthy and multiple offenses was necessarily determined by the jury when it found Waldon guilty of several offenses from several different days. Thus, the trial court could rely upon that reason for supporting this aggravator.

However, the other three reasons are invalid. That Waldon was corrupting young people, if not equivalent to the conviction for contributing to the delinquency

---

**16.** We would assert that the same holds true if the defendant submits to a bench trial.

**17.** One might rationally question whether a prediction of a future occurrence could ever be established beyond a reasonable doubt.
 One might speculate that the State could submit evidence to a jury suggesting that the defendant's prior convictions permit a finding beyond a reasonable doubt that he is likely to commit another crime in the future or that such prior convictions demonstrate that defendant is now in need of incarceration. Such a scenario might present a question as to whether Indiana Evidence Rule 404(b) is thereby violated. That question, however, is left for another day.

of a minor, is at least an element of the crime of contributing to the delinquency of a minor. The law is clear that a material element of a crime may not be used as an aggravating factor. *Meadows*, 785 N.E.2d at 1127. That no care was taken to minimize harm could not be relied upon because it was not found by a jury. Finally, that Waldon was charged with many offenses could not be used because the jury did not find Waldon guilty of the majority of those charges.

The two remaining aggravators, Waldon's character and that he continued the crimes when he believed he was under surveillance, are improper. They are not facts which were found by a jury nor do they appear to have been based upon any admission of Waldon. Consequently, their use violates *Blakely*. Because three potentially valid aggravators remain but we are unsure how the trial court weighed them at sentencing, and given that many of the reasons supporting those aggravators are invalid, we remand to the trial court for resentencing.

The convictions are affirmed, but the cause is remanded for resentencing not inconsistent with this decision.

BAILEY, J., and MATHIAS, J., concur.