# FOR PUBLICATION

FILED
Jul 31 2013, 6:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN E. RIPSTRA**
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SETH A. MILLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 63A01-1210-CR-475 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PIKE CIRCUIT COURT
The Honorable Jeffrey L. Biesterveld, Judge
Cause No. 63C01-1201-FB-38

**July 31, 2013**

**OPINION - FOR PUBLICATION**

**GARRARD, Senior Judge**

A jury convicted Seth Miller on four counts:  Corrupt Business Influence, Burglary of a Dwelling, and two counts of Theft.  He was sentenced to an aggregate term of seventeen years in prison and five years of probation.  On appeal, Miller challenges only his conviction for Corrupt Business Influence.

The governing statute provides in pertinent part:

A person:

* * * *

> (3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;

commits corrupt business influence, a Class C felony.

Ind. Code § 35-45-6-2 (1991).

The facts of the case disclose that on the night of January 9, 2012, Ivy Smith, a friend of Miller, sent him a text and then picked him up in her car.  As they were driving, they discussed burglarizing homes.  After midnight they stopped at the Fredericks' home and entered it through an unlocked sliding glass door.  Miller stole a television, a laptop computer and a purse.  Smith found a camera and a wallet in the purse.  As the two were then driving toward Winslow, Indiana, they discussed using credit cards that they found in the purse.

Miller spotted a black Charger parked in a driveway, and Smith stopped the car. Miller took video games and a wallet from the Charger.  They then drove to the home of Smith's father where they took most of the stolen items inside.

The two then drove to a Wal-Mart store in Washington, Indiana, to try to use the stolen credit cards. They entered the store and both placed items totaling $1124 in a cart and then attempted to pay for them with Janet Frederick's credit card. The card was declined. They tried again at a Vincennes Wal-Mart where both stolen credit cards were declined. This happened yet again at a Vincennes CVS store and a liquor store. Leaving Vincennes, the two returned to Winslow.

This all occurred in less than twenty-four hours. If Smith's later disposal of the computer and camera are taken into account, less than forty-eight hours were involved.

Indiana's corrupt business influence statute is patterned after the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. Our supreme court has determined, however, that under the Indiana act which applies to "a person . . . who . . . participates in the activities of that enterprise," it is unnecessary that a person play some part in directing the affairs of the enterprise as required by the federal act. Simple participation is enough. *Keesling v. Beegle*, 880 N.E.2d 1202, 1206 (Ind. 2008).

Even so, federal cases concerning the general construction of the Act are instructive. *See, e.g.*, *Waldon v. State*, 829 N.E.2d 168, 176 (Ind. Ct. App. 2005), *trans. denied*; *see also Kollar v. State*, 556 N.E.2d 936, 940 (Ind. Ct. App. 1990), *trans. denied*.

Both statutes require: (1) a knowing or intentional degree of participation (2) in an enterprise (3) through a pattern of racketeering activity. *Waldon*, 829 N.E.2d at 175. Indiana Code section 35-45-6-1(c) (2011) provides:

"Enterprise" means:

3

(1) a sole proprietorship, corporation, limited liability company, partnership, business trust, or governmental entity; or

(2) a union, an association, or a group, whether a legal entity or merely associated in fact.

In addition, Indiana Code section 35-45-6-1(d) defines a "pattern of racketeering activity" as "engaging in at least two (2) incidents of racketeering activity . . . that are not isolated incidents."[1]

We find the critical issues in Miller's case to be whether the evidence was sufficient to establish the element of enterprise and the necessary *pattern* of racketeering activity.

We adopt the reasoning of the Supreme Court in *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981), that was cited with approval by this Court in *Waldon*:

> In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.' The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. *The former is proved by evidence of an ongoing organization, formal or informal,* and by evidence that the various associates function *as a continuing unit.* The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

---

[1] Subparagraph (e) then lists more than thirty offenses that constitute racketeering activity.

829 N.E.2d at 176 (emphasis added).

We also agree with the *Waldon* court's reliance upon two other federal decisions in determining whether an enterprise exists for purposes of prosecution under Indiana Code section 35-45-6-2(3). In *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815 (8th Cir. 1992), the court stated that the essential elements of an enterprise include: "(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering."

Of more help is the Seventh Circuit opinion in *United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir. 1996), where the court stated, "If the 'enterprise' is just a name for the crimes the defendants committed, or for their agreement to commit these crimes that was charged separately in the conspiracy count, then it would not be an enterprise within the meaning of the statute."[2] (quoting *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991)). Furthermore, the hallmark of an enterprise is structure. *Id.* A RICO enterprise is an ongoing group of persons "associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Id.*

The enterprise element in *Waldon* was established by the evidence that Waldon recruited the assistance of three juveniles to commit a series of burglaries in the Lafayette area during the summer of 2002. They would drive around and Waldon would mention the places he wanted to hit. They would enter businesses by prying around the locks on

---

[2] Miller might have been charged with conspiracy under Indiana Code section 35-41-5-2 (1977), but any conviction would likely be barred by our double jeopardy rule. *See, e.g.*, *Gregory-Bey v. State*, 669 N.E.2d 154, 158 (Ind. 1996), *overruled in part on other grounds by Grinstead v. State*, 684 N.E.2d 482, 486 (Ind. 1997).

5

the doors, while one stayed outside as a lookout and communicated with the others by walkie-talkie. Waldon would later divide the proceeds among them. The pattern developing showed regular, almost daily, attempts at burglary.

Contrast that with the situation before us. Here, Miller and Smith got together on the night in question and committed the offenses described. There was no evidence of a prior history of such conduct, nor was there evidence that they planned to repeat their escapade. The events all occurred in a very brief period. Indeed there was scant evidence of a *pattern* of racketeering activity. As the court pointed out in *Rogers*, the hallmark of an enterprise is structure. It is an ongoing group of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making.

The evidence in this case simply fails to establish the necessary element of an enterprise within the meaning of the statute. Accordingly, we need not reach the additional issue of whether their episode of conduct qualifies as a pattern of racketeering activity.

The conviction for corrupt business influence is reversed and the sentence of eight years thereon is vacated.

In all other respects the judgment is affirmed.

Affirmed in part and reversed in part.

FRIEDLANDER, J., and KIRSCH, J., concur.