ATTORNEYS FOR APPELLANT
Andrew Ault
Abshishek Chaudhary
Indiana Legal Services, Inc.
Indianapolis, Indiana

John F. Brengle
Indiana Legal Services, Inc.
New Albany, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

David Lee Steiner
Deputy Attorney General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

**FILED**
Mar 24 2015, 9:38 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 49S02-1312-MI-790

DETONA SARGENT,

*Appellant (Defendant below),*

v.

STATE OF INDIANA, AND THE CONSOLIDATED
CITY OF INDIANPOLIS/MARION COUNTY, AND
THE INDIANAPOLIS METROPOLITAN POLICE
DEPARTMENT,

*Appellees (Plaintiffs below).*

Appeal from the Marion Superior Court, No. 49D07-1111-MI-44802
The Honorable Michael Keele, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-1209-MI-708

**March 24, 2015**

**Rucker, Justice.**

On cross-motions for summary judgment the trial court deemed a vehicle forfeited and awarded the same to the Indianapolis Metropolitan Police Department. However the undisputed facts disclose the vehicle's owner is entitled to possession. We therefore reverse the judgment of the trial court.

**Facts and Procedural History**

The State of Indiana, the City of Indianapolis, and the Indianapolis Metropolitan Police Department (collectively "the State") filed a complaint against Detona Sargent seeking forfeiture of her 1996 Buick Century automobile worth approximately $1,700.00. The State's action was pursued under what is commonly referred to as the "Civil Forfeiture Statute." See Ind. Code §§ 34-24-1 et seq. More particularly Indiana Code section 34-24-1-1(a) provides in relevant part:

> The following may be seized: (1) All vehicles . . . if they are used or are intended for use by the person or persons in possession of them to transport or in any manner to facilitate the transportation of the following: . . . (B) Any stolen . . . or converted property . . . if the retail or repurchase value of that property is one hundred dollars ($100) or more.

In this summary judgment action on the State's complaint for forfeiture the undisputed facts as shown by the materials presented to the trial court are as follows. Sargent was employed at a Wal-Mart return-merchandise distribution center. On September 16, 2011, she drove her 1996 Buick Century to the center. After arrival Sargent allowed a co-worker to use her car during her shift with the understanding the co-worker would return so that Sargent could drive home. Minutes before Sargent was scheduled to leave for the day, she grabbed four iPhones in their original packaging and stuffed them under her shirt. The phones had a retail value of approximately $1,200.00. As Sargent attempted to leave the center she was stopped and detained by a store manager and was subsequently searched by a staff member, which revealed the four iPhones. An officer of the Indianapolis Metropolitan Police Department arrived on the scene and was present as the store manager questioned Sargent. During questioning, Sargent told the manager "to go outside to make sure that[,] if [her co-worker] was [in Sargent's car] waiting, she should stop waiting and go home because [Sargent] would not be coming out."

2

App. at 16. Based on this information the officer went to the parking lot to search for Sargent's vehicle. The officer located the car and found "a female in the driver's seat[.]" Id. 27. The vehicle was towed, and Sargent was arrested for theft. On January 10, 2012, under terms of an agreement, Sargent pleaded guilty to theft as a Class D felony and was sentenced to 365 days in the Department of Correction with all but four days suspended to probation.

Twenty days after Sargent pleaded guilty the State moved for summary judgment on its forfeiture complaint and Sargent responded with a cross-motion for summary judgment. After a hearing the trial court granted the State's motion and denied Sargent's motion. On appeal Sargent argued (1) there was no nexus between her attempted theft and the vehicle she used to come to work; and (2) her vehicle was exempt from execution by operation of the Indiana Constitution[1] and Indiana's civil exemption statute. The Court of Appeals rejected both claims and affirmed the judgment of the trial court. See Sargent v. State, 985 N.E.2d 1108 (Ind. Ct. App. 2013), vacated. Having previously granted transfer we now reverse the judgment of the trial court. Additional facts are set forth below.

## Standard of Review

When reviewing a grant or denial of a motion for summary judgment our standard of review is the same as it is for the trial court. Kroger Co. v. Plonski, 930 N.E.2d 1, 4 (Ind. 2010). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 (Ind. 2012) (citations omitted). Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. Id. In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter the parties have specifically designated to the trial court.

---

[1] This constitutional claim, which Sargent raises for the first time on appeal, refers to Article 1, Section 22 of the Indiana Constitution and provides: "The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted: and there shall be no imprisonment for debt, except in case of fraud."

See Ind. Trial R. 56 (C), (H). We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. Plonski, 930 N.E.2d at 5. "The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012).

## Discussion

In support of its motion for summary judgment the State designated the probable cause affidavit for the underlying theft charge, the charging information for theft, a certified copy of the plea agreement, and the abstract of judgment. See App. 35-39. In support of her cross-motion for summary judgment Sargent designated her own affidavit largely recounting the facts as set forth above. Separately Sargent also filed an "Affidavit and Notice of Claim of Exemption" declaring in part that her 1996 Buick Century was valued at $1,700.00. Sargent contended the automobile was exempt from forfeiture under the provision of Indiana's civil exemption statute.[2] In moving for summary judgment Sargent declared in part: "The facts, as designated by Plaintiff, are insufficient to sustain Plaintiff's claim and Defendant should be awarded judgment in her favor. . . . The facts designated in Defendant's Designation of Evidence are sufficient to sustain her Cross Motion." App. at 8. The State then filed the affidavit of the arresting officer in opposition to Sargent's cross-motion. See id. at 26-27. Both parties agree there are no genuine issues of material fact. Id. at 6, 8.

As recounted earlier the State sought forfeiture of Sargent's vehicle under the provisions of the Civil Forfeiture Statute which provides in relevant part:

> The following may be seized: (1) All vehicles . . . if they are *used or are intended for use* by the person or persons *in possession* of them to transport or in any manner to facilitate the transportation of the following: . . . (B) Any stolen . . . or converted property . . .

---

[2] The statute provides in pertinent part: "The following property of a debtor domiciled in Indiana is exempt: . . . tangible personal property of eight thousand dollars ($8,000.)" I.C. § 34-55-10-2(c)(2).

4

if the retail or repurchase value of that property is one hundred dollars ($100) or more.

I.C. § 34-24-1-1(a). Relying on the designated materials and seizing on the phrase "used or are intended for use" the State contended and the trial court agreed "there is no genuine issue of material fact and that Defendant Detona Sargent intended to use the subject 1996 Buick to facilitate the transportation of stolen property . . . ." App. at 1. Importantly, however, in addition to demonstrating that Sargent used or intended to use her vehicle to facilitate the transportation of stolen property, the State also carried the burden of demonstrating Sargent was "in possession" of the vehicle at the time. See I.C. § 34-24-1-1(a).

Although arising in a different context our jurisprudence on the issue of "possession" is rather straightforward: it can be either actual or constructive. Actual possession occurs when a person has direct physical control over the item. Gee v. State, 810 N.E.2d 338, 340 (Ind. 2004). When the State cannot show actual possession, it may nonetheless prevail on proof of constructive possession. Gray v. State, 957 N.E.2d 171, 174 (Ind. 2011). "A person constructively possesses [an item] when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." Id. (citing Lampkins v. State, 682 N.E.2d 1268, 1275 (Ind. 1997), modified on reh'g, 685 N.E.2d 698 (Ind. 1997)).

Here based on the Rule 56 materials presented to the trial court it is apparent that Sargent had neither actual nor constructive possession of her Buick vehicle at the time it was "used or intended for use" to "facilitate the transportation" of stolen property. I.C. § 34-24-1-1(a). At all relevant times Sargent was detained in the store and thus had no physical control over the vehicle. Indeed Sargent had not been in actual possession of her car since earlier in the day when she allowed a co-worker to use it on condition the worker would return so that Sargent could drive home at the end of her shift. As for constructive possession, even if one might infer that Sargent had the "intent" to maintain dominion and control over the car, the record makes clear that her detention made it impossible for her to have the "capability" to maintain such control.

By failing to demonstrate that Sargent was "in possession" of the vehicle as contemplated by Indiana Code section 34-24-1-1, the State was not entitled to forfeiture of the vehicle. The trial court thus erred by entering summary judgment in the State's favor and denying Sargent's motion.

## Conclusion

We reverse the judgment of the trial court and remand this cause with instructions to enter an order granting summary judgment in Sargent's favor.[3]

Rush, C.J., and Dickson, J., concur.
David, J., dissents with separate opinion in which Massa, J., joins.
Massa, J., dissents with separate opinion.

---

[3] Because we resolve this case on other grounds we decline to address Sargent's statutory construction or Indiana constitutional claim.

**David, J., dissenting.**

I respectfully dissent, as Detona Sargent had constructive possession of her 1996 Buick Century when she stole four iPhones from her employer on September 16, 2011. This Court has long held that, in order to prove constructive possession, the State must show that the defendant has both the intent and capability to maintain "dominion and control" over the property in question. <u>See</u>, <u>for</u> <u>example</u>, <u>Goliday v. State</u>, 708 N.E.2d 4, 6 (Ind. 1999). Though at the time of the thefts Sargent was not physically occupying her vehicle, she exerted "dominion and control" over the Buick, as evidenced by her instruction to her co-worker to return the vehicle by the end of her shift so she could drive home. Thus, she constructively possessed the Buick.

I disagree with the majority's conclusion that "the record makes clear that her detention made it impossible for her to have the 'capability' to maintain such control." Slip. op. at *5. Though true Sargent was detained, her detention did not terminate her *constructive* possession of the Buick, as it was not until the vehicle was towed away that she lost her capability to control it.

With the knowledge that Sargent constructively possessed her Buick at the relevant time, I turn to Indiana Code § 34-24-1-1(a)(1)(B) (2014), which, as the majority recounts, permits the forfeiture of a vehicle used or intended to be used by the person in possession of it to transport stolen property with a retail value of at least one hundred dollars. Because Sargent fully intended to use the Buick to transport stolen iPhones collectively valued at a retail price of approximately $1,200, and would have done so had security not intervened, I agree with the Court of Appeals and the trial court that § 34-24-1-1(a)(1)(B) allowed the State to seize the Buick— however ill-advised some may find this use of official discretion.

Before this Court, Sargent argues that her Buick is nevertheless exempt from forfeiture under Indiana Code § 34-55-10-2 (2014) and Article 1, § 22 of the Indiana Constitution. Article 1, § 22 provides that:

> The privilege of the *debtor* to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted: and there shall be no imprisonment for debt, except in case of fraud.

(Emphasis added.) Enacted to effectuate Article 1, § 22, Indiana Code § 34-55-10-2(c), in relevant part, states that "[t]he following personal property of a *debtor* domiciled in Indiana is exempt: . . . (2) [o]ther real estate or tangible personal property of eight thousand dollars ($8,000)." (Emphasis added.) According to Sargent, her Buick valued at $1,700 falls within the protections of § 34-55-10-2(c) and Article 1, § 22.

Should we have reached this question, I would have also agreed with the Court of Appeals that Sargent is not a "debtor" under § 34-55-10-2 or Article 1, § 22 because a "debtor" is "[o]ne who owes an obligation to another, esp. an obligation to pay money," and a forfeiture order is not a money judgment. See BLACK'S LAW DICTIONARY (9th ed. 2009). Thus, by the plain language of Indiana Code § 34-55-10-2(c), as well as Article 1, § 22 of the Indiana Constitution, Sargent is *not* entitled to exemption from forfeiture of her vehicle under Indiana Code § 34-24-1-1(a)(1)(B).

For these reasons, I respectfully dissent. Because the Buick was not exempt from forfeiture, I would affirm the trial court's grant of the State's motion for summary judgment and denial of Sargent's motion for summary judgment.


Massa, J., joins.

**Massa, J., dissenting.**

Notwithstanding my admiration for the majority's desire to do justice in this case, I fully join Justice David's dissent. I write separately to offer an additional comment about discretion.

As Justice David notes, Ms. Sargent drove her car to work at Wal-Mart, where she then committed an employee theft of four cell phones. While at work, she loaned her car to a friend to run an errand. The friend returned the car, and it was in the Wal-Mart lot when Sargent was caught. There is, in my judgment, sufficient evidence that Sargent constructively possessed her car and that it was "intended for use . . . to transport" the phones, and thus technically eligible for forfeiture.

But really? Firing Sargent and having her righteously prosecuted for felony theft was not enough? The State had to take her car, too?

This overreach has now, it seems, prompted our Court to grant some modest, almost equitable, relief to the excessively punished thief via the possible return of a twenty-year-old Buick. It brings to mind the often quoted maxim that hard cases make bad law. The more complete quote from Baron Rolfe in 1842 applies today to Ms. Sargent's case: "This is one of those unfortunate cases in which . . . it is, no doubt, a hardship upon the plaintiff to be without a remedy, but by that consideration we ought not to be influenced. Hard cases, it has frequently been observed, are apt to introduce bad law." Winterbottom v. Wright, (1842) 152 Eng. Rep. 402 (Exch. of Pleas) 405–06. Indeed. Stay tuned for arguments by more appropriate targets of forfeiture laws that they didn't "possess" their new Mercedes because they weren't sitting in it at the time of their arrest.

This is not the first time in recent years that we have seen an almost comical deployment of law enforcement Weapons of Mass Destruction against pedestrian targets. In Miller v. State, 992 N.E.2d 791 (Ind. Ct. App. 2013), trans. denied 7 N.E.3d 993 (Ind. 2014), the prosecutor used the RICO statute[1] against a common home burglar who stole a TV, computer, and credit cards, and subsequently tried, unsuccessfully, to use the cards at department, drug, and liquor stores on the same night. The Court of Appeals vacated the racketeering conviction, but in so doing may have created precedent that could frustrate future applications of the statute; the Attorney General certainly so argued without success in our Court. Oral Arg. Video Tr. at 33:34–36:38.[2]

Our Constitution and statutes vest police and prosecutors with great power to initiate proceedings that can ultimately deprive liberty and divest property where certain crimes are proven. State and federal legislative bodies have provided the special tools of RICO and forfeiture largely to target organized crime[3] and narcotics trafficking.[4] These tools are not

---

[1] "A person . . . who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity[] commits corrupt business influence, a Class C felony." Ind. Code § 35-45-6-2 (2008).

[2] We heard oral argument in Miller with the order on transfer pending. We ultimately declined to accept jurisdiction over the appeal. Time will tell if the Attorney General's fears—which needn't be further explained for the purposes of this dissent—are realized.

[3] George Robert Blakey, known for his role in drafting legislation that became the Federal Racketeer Influenced and Corrupt Organization Act, codified at 18 U.S.C. §§ 1961–68, traces RICO's development, beginning with the government's attempt to understand the Mafia and culminating with text meant to "combat[] organized crime and other syndicated activity as well as the infiltration of legitimate entities by criminal groups." G. Robert Blakey, RICO: The Genesis of an Idea, Trends in Organized Crime, June 2006, at 8, 16.

[4] Although forfeiture has a long history, its use has increased substantially in the past thirty years, hailed as an effective means of addressing drug trade. United States v. Parcel of Land & Residence at 28 Emery St., 914 F.2d 1, 3 (1st Cir. 1990) ("One of the most powerful weapons in the government's arsenal in the continuing 'war' on drugs is its ability to obtain the civil forfeiture of property that is used for or facilitates violations of the drug laws."). In addition to "punishing and deterring those who engage in illegal drug activity," a purpose of the forfeiture statute is to "defray some of the expense incurred in the battle against drug dealing." Katner v. State, 655 N.E.2d 345, 347–48 (Ind. 1995).

without their critics, and their misuse invites further scrutiny.[5]  Moreover, when authorities over-reach, the judiciary is tempted to impose remedies that do justice in a particular case but may do harm to the law over time.

The answer, sometimes, to Rolfe's truism about hard cases, is to not bring them in the first place.

---

[5] See, e.g., Eric Moores, Reforming the Civil Asset Forfeiture Reform Act, 51 Ariz. L. Rev. 777, 779 (2009) ("[Current] procedural safeguards are minimal and police seize property with virtually no oversight."); Editorial Board, When Police Play Bounty Hunter, USA Today (Nov. 20, 2014), http://www.usatoday.com/story/opinion/2014/11/19/police-civil-asset-forfeiture-profit-drug-trafficking -editorials-debates/19299879/ ("The programs, born in the 1970s to seize ill-gotten gains from drug trafficking, have become unmoored from their original intent of taking the profit out of crime.").  Even former directors of the Justice Department's Asset Forfeiture Office have called for an end to the initiative they worked to create, finding "it particularly painful to watch as the heavy hand of government goes amok."  John Yoder & Brad Cates, Government Self-Interest Corrupted a Crime-Fighting Tool into an Evil, Wash. Post (Sept. 18, 2014), http://www.washingtonpost.com/opinions/abolish-the-civil-asset-forfeiture-program-we-helped-create/2014/09/18/72f089ac-3d02-11e4-b0ea-8141703bbf6f _story.html? wpmk=MK0000203.  Such criticism is not limited to the national stage; a recent report raised several concerns about our state and local practices.  Kristine Guerra, Seized Assets:  Star Finds Cases of Cars, Homes Taken—And Owners Not Charged, The Indianapolis Star, Feb. 22, 2015, at A1.