**Frank Lee JONES, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 72S00–9108–CR–648.

Supreme Court of Indiana.

Oct. 14, 1992.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Frank Lee Jones (Defendant–Appellant) was found guilty by a jury of two counts of attempted murder, a class A felony, *Ind. Code* §§ 35–41–5–1 and 35–42–1–1, and was determined to be an habitual offender, *Ind. Code* § 35–50–2–8. On April 29, 1990, he received a sentence of fifty (50) years on each attempted murder conviction, to be served concurrently. In addition, one of the attempted murder sentences was enhanced by thirty (30) years on account of the habitual offender finding. Thus, Jones' total sentence was eighty (80) years. In this direct appeal, Jones raises the following issues:

(1) Whether the trial court abused its discretion in controlling the scope of re-direct examination; and

(2) Whether defendant's sentence is manifestly unreasonable.

We affirm the convictions.

### Facts

In July of 1990, Jimmy Poindexter lived with Charles Benion and his father, Sam Benion. Sam, who lived in an apartment in the rear of the house, was the victim of a stabbing on July 8, and was hospitalized for treatment. On the evening of July 10, Poindexter came home from work, bathed, ate, and fell asleep on the living room couch watching television. Charles and Dalton Hinton were also in the house on July 10. Charles went to his bedroom to watch television while Hinton watched television in the living room.

Later that evening, Charles' brother (the defendant Jones) and a companion knocked on the door looking for Charles. Hinton answered the door, let them in and said Charles was in his bedroom. Jones walked over, knocked on Charles' door, and entered the room. Jones and Charles then went into the kitchen to talk. Jones was very upset about the news of his father's stabbing and was angry with Poindexter for not preventing the stabbing. After they talked a while in the kitchen, they returned to Charles' bedroom. Jones told Charles he was going to the hospital to see

their father. Charles closed his bedroom door and lay back down.

Jones and his companion started out the door, but then Jones returned while his companion remained outside. Jones proceeded to awaken Poindexter by shaking him. Jones called Poindexter a few names and asked him, "Why would you let my father get hurt?" Poindexter denied knowing anything about the stabbing until after it happened, but Jones continued to push Poindexter and call him names. Jones pulled out a gun and shot Poindexter.

Charles heard the shots and opened the bedroom door. As he opened the door, Poindexter fell into the bedroom. Jones walked over to Poindexter, placed his foot on Poindexter's shoulder to hold him down, said, "I stole your wife" and shot Poindexter again.

Jones then walked to the chair where Hinton was seated and shot him in the back of the head. Hinton was shot a total of four times. Jones then ran away.

Poindexter's mother, Catherine Poindexter, who lived across the street, heard the shots fired. After hearing the first shots, she stepped on her porch and saw Jones shoot Hinton. She watched Jones run down the street and called 911.

Poindexter spent three months in the hospital. He lost the hearing in one ear and is paralyzed on one side of his mouth. Two bullets remain in his skull. Hinton sustained bullet wounds to his head and arms, but never lost consciousness. He spent two to three weeks in the hospital, and bullets remain in him as well.

On July 12, 1990, Jones was charged by information with two counts of attempted murder. On October 15, 1990, the State charged Jones with being an habitual offender and amended this information on January 10, 1991. Jones was arrested in Davenport, Iowa, in October of 1990, while using the name of his brother, William Benion.

### I. Re–Direct Examination

Jones asserts reversible error occurred in the trial court's control of the scope of re-direct examination of two witnesses,

Charles Benion and Sgt. David Dosmann. With regard to both witnesses, Jones contends the trial court abused its discretion by permitting the State to exceed the scope of cross-examination.

■ It is well established that the scope and extent of re-direct examination is a matter within the trial court's discretion which will not be disturbed absent an abuse of discretion. *Dooley v. State* (1981), Ind., 428 N.E.2d 1, 6. Generally, the scope of re-direct is limited to answering new matters addressed during cross-examination. *Kimp v. State* (1989), Ind., 546 N.E.2d 1193, 1195. A party, however, is entitled to address an issue on re-direct examination to avoid a false or misleading impression once the opposing party inquires into a subject on cross-examination. *Ratcliffe v. State* (1990), Ind., 553 N.E.2d 1208, 1211; *Kimball v. State* (1983), Ind., 451 N.E.2d 302, 306. Additionally, if the court, in exercising its discretion, permits evidence to be introduced during re-direct examination for the first time, this will not constitute reversible error unless the opposing party is prevented from further questioning the witness on the subject and from presenting other evidence to contradict the testimony if it is prejudicial to his case. *Shipman v. State* (1962), 243 Ind. 245, 255, 183 N.E.2d 823, 838; *cert. denied*, 371 U.S. 958, 83 S.Ct. 515, 9 L.Ed.2d 504 (1963).

### A. *Examination of Charles Benion*

■ During direct examination, Charles testified that he did not see Hinton when he was shot, but did see Hinton afterward. On cross-examination, Charles testified that he never saw anybody shoot Hinton. The State, on re-direct examination, asked Charles about a statement he made shortly after the incident in which he said he saw Jones shoot Hinton. Jones' counsel objected to questions about the statement arguing that the questions were beyond the scope of cross-examination. The trial court overruled the objection and the State was allowed to question Charles about the statement. Jones counsel was permitted on re-cross examination to discredit Charles' testimony.

The record reflects that Jones' counsel took advantage of the re-cross examination to explore Charles' memory of the statement and its accuracy. The police statement itself may have been prejudicial to Jones' case, but he was given the opportunity to discredit it and to present other evidence to dispute the information it contained. Jones has not demonstrated an abuse of the trial court's discretion.

### B. *Examination of Sgt. Dosmann*

■ Sergeant David Dosmann, a homicide investigator, was called as a witness by the State. During direct examination, Sgt. Dosmann identified photographs of the crime scene. Further, on direct examination Sgt. Dosmann identified the location of a blue chair inside the house in which Hinton sat the night he was shot. On cross-examination, Jones' counsel questioned Sgt. Dosmann about the photographs and his ability to see the blue chair from a photograph taken directly in front of the house. Sgt. Dosmann on re-direct examination testified about the lighting conditions in front of the house. Jones' counsel objected on the grounds that the questions were beyond the scope of cross-examination. The objection was overruled, and Sgt. Dosmann was permitted to continue his testimony. Jones' counsel on re-cross examination challenged the testimony of Sgt. Dosmann and later presented a witness who also contradicted the testimony. Jones has not demonstrated how he was prejudiced by this testimony.

We hold that the trial court did not abuse its discretion regarding the scope of the re-direct examination of either Charles Benion or Sgt. Dosmann, and that the trial court committed no reversible error.

### II. Manifestly Unreasonable Sentence

As aggravating circumstances, the trial court found that Jones (1) was on parole when he committed the crime, (2) was recently released from prison, (3) had a history of criminal activity, (4) needed correctional treatment, and that (5) a reduced sentence would depreciate the seriousness of the crime. Additionally, the court found that there were no mitigating circumstances.

Jones acknowledges that the trial court could properly consider two of the specified aggravating circumstances, (1) his prior criminal history, and (2) that he was on parole at the time of the offenses; but argues that these carry little actual aggravating weight because the court merely repeated the statute when stating the other three circumstances and that these two circumstances were used for a double purpose. He asserts that it is manifestly unreasonable to use the prior criminal history to enhance the sentence on the present offense and to use the criminal history to form the basis of the habitual offender status where the trial court failed to identify anything unusual about the nature of the offense or the character of the offender beyond the criminal history. Further, Jones argues that the mandatory sentence for being an habitual offender satisfies the State's interest for an increased punishment of an offender with a criminal history.

■■■■■ Our standard of reviewing a sentence is well established. Sentencing is conducted within the discretion of the trial court and will be reversed only upon a showing of a manifest abuse of that discretion. *Sims v. State* (1992), Ind., 585 N.E.2d 271, 272. It is within the discretion of the trial court to determine whether a presumptive sentence will be increased or decreased because of aggravating or mitigating circumstances. *Id.* A sentence authorized by statute will not be revised unless the sentence is manifestly unreasonable. *Id.* See also *Letica v. State* (1991), Ind., 569 N.E.2d 952, 958. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed. Ind. Appellate Rule 17(B)(2). If a trial court enhances a presumptive sentence, the record "must demonstrate that the determination was based upon the consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved, and the relation of the sentence imposed to the objectives which will be served by that sentence." *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 144. The trial court's statement must identify all significant aggravating and mitigating circumstances, include a specific reason why each circumstance is aggravating or mitigating, and weigh mitigating circumstances against the aggravating factors. *Boyd v. State* (1991), Ind., 564 N.E.2d 519, 524–25.

■■■■■ The trial court record must disclose the factors considered in justifying an enhancement of a presumptive sentence. *Boyd*, 564 N.E.2d at 524. Although there may be several aggravating circumstances, "[o]nly one valid aggravator is needed to sustain an enhanced sentence." *Reaves v. State* (1992), Ind., 586 N.E.2d 847, 852. Additionally, an enhanced sentence may be imposed where the only aggravating circumstance is a prior criminal history. *DuVall v. State* (1989), Ind., 540 N.E.2d 34, 36. Where the record, however, indicates that the trial court did engage in the evaluative processes but simply did not articulate sufficiently the reasons for sentence enhancement, and the record indicates that the sentence was not manifestly unreasonable, then the purposes underlying the specificity requirement are satisfied. *Id.*

■■■■■ Our review of the record reveals that the trial court did evaluate the mitigating and aggravating circumstances. Although the trial court did not fully articulate each aggravating circumstance, the record is sufficient to support sentence enhancement and to determine that the sentence is not manifestly unreasonable.

■■■■■ Jones also asserts that the use of the prior offense to enhance the present offense and to establish habitual offender status is manifestly unreasonable. This Court has held, however, that it is permissible for the trial court to consider the same prior offenses for both enhancement of the instant offense and to establish habitual offender status. *Criss v. State* (1987), Ind., 512 N.E.2d 858, 860. We hold here that the trial court properly evaluated the aggravating and mitigating circumstances and that the sentence is not manifestly unreasonable.

*Conclusion*

Accordingly, the convictions and sentences are affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.