873 N.E.2d 1083 (2007)
Rosalio PEDRAZA, Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 49A04-0609-CR-529.
Court of Appeals of Indiana.
September 24, 2007.
*1085 Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
ROBB, Judge.

Case Summary and Issues
Following a jury trial, Rozalio Pedraza was convicted of two counts of operating a vehicle while intoxicated ("OWI") causing death and having a prior OWI conviction in the last five years, both Class B felonies, and OWI causing serious bodily injury and having a prior OWI conviction in the last five years, a Class C felony, and was determined to be an habitual substance offender. The trial court ordered that Pedraza serve an aggregate term of fifty-two years. Pedraza now appeals his sentence, arguing that the trial court erroneously entered a judgment of conviction for OWI causing serious bodily injury, that the trial court found an improper aggravating circumstance, that the trial court abused its discretion in failing to find mitigating circumstances, that Pedraza's sentence is inappropriate based on his character and the nature of the offenses, and that the trial court erroneously ordered Pedraza's sentences to run consecutively. Concluding that the trial court properly entered a judgment of conviction for OWI causing serious bodily injury, that the trial court did not abuse its discretion in its identification of the aggravating and mitigating circumstances, that Pedraza's sentence is not inappropriate, and that the trial court properly ordered Pedraza's sentences to run consecutively, we affirm.

Facts and Procedural History
On August 13, 2005, Thomas Youngstafel Jr. married Sandra Youngstafel.[1] Following the wedding, the Youngstafels held a reception at the White River Gardens State Park in downtown Indianapolis. Around 11:00 p.m., Christopher Youngstafel, Thomas Jr.'s twin brother, took his father's SUV and drove Thomas Jr. and Sandra to their hotel. Christopher returned to the reception and picked up his father, Thomas Youngstafel Sr., and family friends Emily Kelly, Joseph Gehler, and Dustin Miller. Thomas Sr., Kelly, and Gehler sat in the back seat of the SUV.
Christopher approached the exit of the White River Gardens, where he had a green light, and entered the intersection to turn onto Washington Street. At the same time, Pedraza was traveling west on Washington Street at approximately 50 to 55 miles per hour, at least ten miles per hour over the speed limit. Pedraza switched lanes to avoid a car that was stopped at the red light, and entered the intersection. Pedraza's truck struck the driver's side rear door of the SUV. The force of the impact spun the SUV around, completely ejected Kelly and Gehler from the vehicle, and partially ejected Thomas Sr., leaving him suspended from the rear driver's side door and causing his head to hit the pavement. By the time the first *1086 responding officer arrived on the scene, neither Thomas Sr. nor Gehler had a pulse, and both died of injuries sustained in the accident. Kelly sustained non-fatal, but serious injuries, including a lacerated spleen.
Blood tests revealed that Pedraza's blood-alcohol concentration ("BAC") was .26 gram of alcohol per 100 milliliters, an amount over three times the legal limit. See Ind.Code § 9-30-5-1(a) (one who operates a motor vehicle with a BAC of at least .08 gram of alcohol but less than .15 gram per 100 milliliters commits a Class C misdemeanor). Toxicology testing also revealed that Pedraza had Benzoylecgonine present in his blood, indicating recent cocaine use.
On August 15, 2005, the State charged Pedraza with eight offenses: two counts of OWI causing death, both Class C felonies, two counts of operating a motor vehicle with a BAC greater than .15, both Class B felonies, two counts of reckless homicide, both Class C felonies, OWI causing serious bodily injury, a Class D felony, and operating a motor vehicle with a BAC greater than .08 causing serious bodily injury, a Class D felony. On September 1, 2005, the State filed an Amended Information alleging that Pedraza was an habitual substance offender, and seeking to enhance the OWI causing death counts to Class B felonies and the OWI causing serious bodily injury and operating a motor vehicle with a BAC greater than .08 causing serious bodily injury counts to Class C felonies based on the fact that Pedraza had a prior OWI conviction. On August 9, 2006, the State filed a second Amended Information, charging Pedraza with two counts of operating a motor vehicle with a metabolite in the blood causing death, Class B felonies, and operating a motor vehicle with a metabolite in the blood causing serious bodily injury, a Class D felony. The case proceeded to trial on August 14, 2006, and the jury found Pedraza guilty of all charges.[2]
On August 25, 2006, the trial court held a sentencing hearing, at which the trial court vacated all counts except for both OWI causing death counts, the OWI causing serious bodily injury count, and the habitual substance offender enhancement. The trial court found as aggravating circumstances Pedraza's criminal history, the fact that he was "in need of rehabilitation that can only be offered through a penal facility and that prior attempts at rehabilitation through probation have all failed," and "the nature and circumstances of this offense the fact that three families are totally devastated because of the horrific nature of this accident." Transcript at 304. The trial court found mitigating circumstances of "the fact that [Pedraza] did express [his] remorse in Court today and [he] did finally admit that [he] had consumed . . . approximately 15 beers on that occasion." Id. at 304-05. The trial court went on to specifically note that it was not considering the fact that Pedraza chose to go to trial instead of accepting the State's plea offer as an aggravating circumstance.[3] The trial court found that the aggravating circumstances outweighed the mitigating circumstances, and sentenced Pedraza to eighteen years for both OWI causing death counts, eight years for OWI causing serious *1087 bodily injury, enhanced one of the OWI causing death sentences by eight years because of Pedraza's status as an habitual substance offender, and ordered that all sentences run consecutively for an aggregate sentence of fifty-two years. Pedraza now appeals.

Discussion and Decision

I. Judgment of Conviction for OWI Causing Serious Bodily Injury
At the sentencing hearing, the trial court stated that it was vacating the jury's judgment of conviction under count VII, operating a motor vehicle while intoxicated causing serious bodily injury, a Class D felony, stating, "Count VII, operating a vehicle while intoxicated, the serious bodily injury of Miss [Kelly], the D Felony, the Court's going to vacate that judgment of conviction." Tr. at 307. The trial court later entered a judgment of conviction for "Count XI, operating a motor vehicle while intoxicated, serious bodily injury with a prior Class C Felony, with respect to Miss Kelly." Id. at 308. The charging information for count XI indicates that count XI is "Part II of Count VII," and states that Pedraza,
[h]eretofore charged in Count VII on Page I with Operating A Motor Vehicle While Intoxicated Causing Serious Bodily Injury, was previously convicted of the offense of Operating A Vehicle While Intoxicated . . . and that said conviction occurred within five (5) years of the date alleged on Page I of this information.
Appellant's Appendix at 48. Pedraza argues that because Count XI is "merely an enhancement based on a prior conviction," and because "[w]ith the vacation of the judgment of conviction under Count VII, there is no conviction to be enhanced," we should vacate the sentence imposed under count XI. We disagree.
When interpreting the trial court's judgment, "it is critical to take into account the language of the entire order." Gilbert v. Gilbert, 777 N.E.2d 785, 792 (Ind.Ct.App.2002). In doing so, "we may look at the entire record, including, but not limited to, the complaint, findings, and evidence to ascertain the judgment's meaning and effect." Otto v. Park Garden Assocs., 612 N.E.2d 135, 140 (Ind.Ct.App.1993), trans. denied.
Although the trial court stated that it was vacating the conviction under count VII, the trial court clearly intended to enter a judgment of conviction against Pedraza for his act of OWI causing serious bodily injury, as it stated that it was entering a judgment of conviction under count XI, which was the second part of count VII, for the injuries caused to Kelly. Although count XI references only Pedraza's prior conviction, and does not contain the factual allegations of the instant offense, it references count VII, which does contain the factual allegations, and contains a citation to the OWI causing serious bodily injury statute. The abstract of the judgment indicates that the trial court entered judgment under count XI for "OPER. VEH. WHILE INTOX, SBI/W/PRIOR," appellant's app. at 19, and cites the OWI causing serious bodily injury statute. Although the trial court could have been more clear in its oral sentencing statement, we conclude that when the trial court stated that it was vacating the conviction under count VII, the trial court was merely indicating that instead of entering a judgment of conviction as a Class D felony, it was entering judgment as a Class C felony because of the enhancement under count XI. Therefore, we decline to vacate Pedraza's sentence under count XI, and conclude that the trial court properly entered a judgment of conviction and sentenced Pedraza for OWI causing serious bodily injury.

*1088 II. Aggravating Circumstance of Criminal History
The trial court found Pedraza's criminal history of two previous OWI convictions to constitute an aggravating circumstance. Pedraza argues that this aggravator is improper as the two OWI convictions were the basis for his habitual substance offender enhancement. We disagree.
Our supreme court has repeatedly stated that "it is permissible for the trial court to consider the same prior offenses for both enhancement of the instant offense and to establish habitual offender status." Jones v. State, 600 N.E.2d 544, 548 (Ind. 1992); see also Buchanan v. State, 699 N.E.2d 655, 657 (Ind.1998) (holding that it is not manifestly unreasonable for a trial court "to have considered the same prior criminal offenses for both his habitual offender status and for enhancement of the presumptive terms and imposition of consecutive sentences"); Criss v. State, 512 N.E.2d 858, 860 (Ind.1987) ("It is not error for a court to use the same prior offenses for both enhancement of the instant offense and to establish a status as an habitual offender."). However, our supreme court has also stated that where a trial court found as aggravating circumstances a defendant's two prior felony convictions and the fact that he used a gun during the crime, "[i]nasmuch as the use of the gun was what raised the robbery to a Class B felony and the two previous felonies are what supported the habitual offender finding, they cannot standing alone be the aggravating circumstances to justify the enhanced sentence for the robbery." McVey v. State, 531 N.E.2d 458, 461 (Ind. 1988). Therefore our supreme court has indicated that although a trial court may properly consider as aggravating circumstances the same crimes used to establish an habitual offender determination, a trial court cannot properly enhance a sentence based on a defendant's criminal history that consists solely of crimes used to establish the defendant's habitual offender status.
We also must reconcile this rule with the change in Indiana's sentencing statutes that occurred in 2005, where "presumptive" sentences were replaced with "advisory" sentences. See Weaver v. State, 845 N.E.2d 1066, 1070 (Ind.Ct.App.2006), trans. denied. Under the "presumptive" sentencing scheme, a trial court did indeed "enhance" sentences beyond the presumptive sentence based on its balancing of the aggravating and mitigating circumstances. However, under the advisory sentencing scheme, a trial court may impose any sentence that is statutorily and constitutionally permissible "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind.Code § 35-38-1-7.1; Primmer v. State, 857 N.E.2d 11, 15 (Ind.Ct.App.2006), trans. denied. Therefore, a trial court's finding of an aggravating circumstances no longer constitutes an "enhancement" of a sentence, as the trial court is not required to use the advisory sentence. See Weaver, 845 N.E.2d at 1072.
However, a trial court may still be said to have abused its discretion in sentencing a defendant under the advisory sentencing scheme. A trial court may abuse its discretion by failing to issue a sentencing statement, or issuing a sentencing statement that either bases a sentence on reasons that are not supported by the record, omits reasons both advanced for consideration and clearly supported by the record, or includes reasons that are improper as a matter of law. Anglemyer v. State, 868 N.E.2d 482, 490-91 (Ind.2007). One way in which a trial court can no longer be said to have abused its discretion is by improperly weighing or balancing aggravating and mitigating circumstances. *1089 Id. at 491. "[T]his is so because once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then `impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana.'" Id. (quoting Ind.Code § 35-38-1-7.1(d)).
Our supreme court has unambiguously stated that a trial court may "consider" the same crimes used to establish a defendant's habitual offender status when determining a defendant's sentence for the underlying crime. See Jones, 600 N.E.2d at 548; Buchanan 699 N.E.2d at 657. Although our supreme court stated in McVey that it is improper to "enhance" a sentence based solely on the aggravating circumstance of a defendant's criminal history, when the history consists solely of the habitual offender crimes, it did not say that the aggravator itself was improper. See 531 N.E.2d at 461. Indeed, our supreme court stated that these previous crimes "cannot standing alone be the aggravating circumstances to justify the enhanced sentence for the robbery." Id. (emphasis added). The implication is that these previous convictions, along with other aggravating circumstances, could justify an enhanced sentence. Thus, McVey announced a rule relevant to appellate review of a trial court's weighing of the aggravating circumstance, and did not hold that the finding itself of such circumstance was improper. Compare Mathews v. State, 849 N.E.2d 578, 590 (Ind.2006) (agreeing that it is "improper . . . to rely on a defendant's maintaining his innocence as an aggravator"); Morgan v. State, 829 N.E.2d 12, 15 (Ind.2005) (trial court improperly considered the fact that the defendant sold drugs for profit as an aggravating circumstance); Smith v. State, 770 N.E.2d 818, 821-22 (Ind.2002) (trial court improperly found aggravating factor of impact on victim where it failed to explain how the impact was distinct); Fredrick v. State, 755 N.E.2d 1078, 1084 (Ind.2001) (lack of employment does not constitute a valid aggravating circumstance). Therefore, the trial court did not act improperly in identifying Pedraza's criminal history as an aggravating circumstance.[4]
Also, because a trial court may no longer be said to abuse its discretion in weighing aggravating circumstances, we need not speculate as to how much weight the trial court gave to Pedraza's previous convictions.[5]

*1090 III. Mitigating Circumstances
Pedraza next argues that the trial court failed to find the mitigating circumstances that his imprisonment will cause undue hardship to his son, and that he did not contemplate that his crime of OWI would cause serious harm. We disagree.
Whether or not to find mitigating circumstances is a decision that rests within the discretion of the trial court, and we will review a trial court's failure to find mitigating circumstances for an abuse of discretion. See Anglemyer, 868 N.E.2d at 490. We will conclude that a trial court abuses its discretion if its sentencing statement "omits reasons that are clearly supported by the record and advanced for consideration." Id. at 491.
At the sentencing hearing, Pedraza did not raise either the fact that his incarceration would result in undue hardship to his son or the fact that he did not intend to cause harm. Because Pedraza failed to raise these circumstances, the trial court did not abuse its discretion by not identifying these circumstances in its sentencing statement. Id. at 492 ("[T]he trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing.").

IV. Appropriateness of Pedraza's Sentence
Even if the trial court had found an improper aggravating circumstance or abused its discretion in failing to find mitigating circumstances, we would not be likely to reverse in this case. Instead, as the trial court clearly explained its reasons for sentencing, we would choose to "exercise our authority to review and revise the sentence" under Indiana Appellate Rule 7(B). Windhorst v. State, 868 N.E.2d 504, 507 (Ind.2007). When reviewing a sentence imposed by the trial court, we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We have authority to "revise sentences when certain broad conditions are satisfied." Neale v. State, 826 N.E.2d 635, 639 (Ind.2005). When determining whether a sentence is inappropriate, we recognize that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." Weiss v. State, 848 N.E.2d 1070, 1072 (Ind.2006). We must examine both the nature of the offense and the defendant's character. See Payton v. State, 818 N.E.2d 493, 498 (Ind.Ct.App. 2004), trans. denied. When conducting this inquiry, we may look to any factors *1091 appearing in the record. Cf. Samaniego-Hernandez v. State, 839 N.E.2d 798, 806 (Ind.Ct.App.2005) ("our review of the record does not disclose any basis upon which to grant relief relative to [defendant's] character or the nature of the offense"), abrogated on other grounds, Anglemyer, 868 N.E.2d 482; Julian v. State, 811 N.E.2d 392, 403 (Ind.Ct.App.2004), trans. denied (examining facts of case to determine that sentence was not inappropriate based on defendant's character).
Here, Pedraza was sentenced to eighteen years for both counts of OWI causing death. The advisory sentence for these crimes is ten years, with a maximum sentence of twenty years. Ind.Code § 35-50-2-5. Because of Pedraza's status as an habitual substance offender, the trial court enhanced one of these sentences by eight years, the maximum legal enhancement. See Ind.Code § 35-50-2-10(f). Pedraza was sentenced to another maximum sentence of eight years for OWI causing serious bodily injury. See Ind.Code § 35-50-2-6. In all, Pedraza's fifty-two year sentence is four years shorter than the maximum sentence the trial court could legally have imposed.
In regard to the nature of the offenses, much of the testimony at the sentencing hearing, and many of the trial court's comments focused on the impact of Pedraza's actions on the victims' family and friends. Pedraza killed a father on the day of his son's wedding, while he was leaving the reception, in the presence of his wife, son, and friends. He also killed a young man in the presence of his girlfriend, who was also seriously injured in the accident, and awoke in the hospital not only battling serious injuries, but also to find out that her loved one had died. These results are truly tragic. But are all these surrounding circumstances truly justifications for sentencing Pedraza to a near-maximum sentence? True, Pedraza chose to drive while highly intoxicated, and he certainly deserves harsh punishment for his actions. But do the facts that his victims were celebrating a wedding and had many loved ones who are struggling to cope with their loss make his crime any worse than if he had killed two people without children or spouses who were not celebrating a wedding? We feel uncomfortable justifying a defendant's sentence based upon the perceived value of the lives that he took. As our supreme court has stated in an analogous context: "We appreciate the terrible loss of a loved one. But because such impact on family members accompanies almost every murder, we believe it is encompassed within the range of impact which the presumptive sentence is designed to punish." Bacher v. State, 686 N.E.2d 791, 801 (Ind.1997). In order for impact on a family to make a longer sentence appropriate, "`the defendant's actions must have had an impact on . . . `other persons' of a destructive nature that is not normally associated with the commission of the offense in question and this impact must be foreseeable by the defendant.'" Id. (quoting State v. Johnson, 124 Wash.2d 57, 873 P.2d 514, 525 (1994)). The deaths in this case were tragic and senseless, but so are all deaths caused by intoxicated drivers. Also, although harming an innocent party may be "foreseeable" to anyone who steps behind the wheel of a vehicle while intoxicated, it would certainly be a stretch to say that causing the death of a father and guest leaving a wedding reception in the presence of loved ones was foreseeable.
However, circumstances other than the tragic wake of suffering caused by Pedraza leave us convinced that his sentence is not inappropriate. First, Pedraza's BAC was over three times the legal limit, and he had cocaine in his system. *1092 These circumstances far exceed the minimum requirements to be considered intoxicated. Second, Pedraza was not merely driving inattentively, but was speeding near a metropolis's downtown, where pedestrians and traffic are common, and swerved around a vehicle stopped at a red light in order to run the light. Although any instance of driving while intoxicated inherently increases the risk of harm to others using public streets, Pedraza's reckless behavior made such harm almost inevitable.
In regard to Pedraza's character, his criminal history is not extensive, as he has only two misdemeanor convictions. However, Pedraza has been in this country since only 2000. In July 2001 he was arrested on an operating a vehicle while never having received a license charge, which was dismissed in January 2002.[6] While this charge was still pending, he was arrested and convicted of OWI and had his sentence suspended to probation. The State filed a petition to revoke this probation when Pedraza was arrested for public intoxication in September 2002. The State withdrew this petition and Pedraza eventually successfully completed probation in November 2002. The public intoxication charge was dismissed in October 2002. In July 2003, Pedraza was arrested for OWI with a prior OWI, convicted of a Class D felony, and again had his sentence suspended to probation. Pedraza successfully completed probation in October 2004 and his conviction was reduced to a Class A misdemeanor. Ten months later, Pedraza committed the instant offense. Pedraza's involvement with the criminal justice system indicates that he has been given breaks in the past. Although he did manage to successfully complete both of his probationary periods, Pedraza clearly was neither rehabilitated nor deterred from illegal activity by his probation or previous arrests. Although neither of his previous convictions involved offenses nearly as serious as the current offense, they involve the same illegal and dangerous conduct, driving while intoxicated.
Based on the nature of the offense and Pedraza's character, we conclude that his sentence is not inappropriate.

V. Consecutive Sentences
Finally, Pedraza argues that the trial court improperly ordered that Pedraza's sentences, which were all above the advisory sentence, run consecutively in violation of Indiana Code section 35-50-2-1.3, which states:
(b) Except as provided in subsection (c), a court is not required to use an advisory sentence.
(c) In imposing:
(1) consecutive sentences in accordance with Ind.Code 35-50-1-2;
(2) an additional fixed term to an habitual offender under section 8 of this chapter; or
(3) an additional fixed term to a repeat sexual offender under section 14 of this chapter;
a court is required to use the appropriate advisory sentence in imposing a consecutive sentence or an additional fixed term. However, the court is not required to use the advisory sentence in imposing the sentence for the underlying offense.
*1093 As support, Pedraza cites Robertson v. State, 860 N.E.2d 621, 624-25 (Ind.Ct.App. 2007), trans. granted, opinion vacated in relevant part, 871 N.E.2d 280 (Ind.2007), in which a different panel of this court held that this statute "is clear and unambiguous and imposes a separate and distinct limitation on a trial court's ability to deviate from the advisory sentence for any sentence running consecutively." As indicated, our supreme court has vacated the portion of the court of appeal's opinion dealing with Indiana Code section 35-50-2-1.3.[7] Our supreme court held that this statute does not require a trial court to impose the "advisory" sentence when sentencing a defendant to consecutive terms. Robertson v. State, 871 N.E.2d 280, 286 (Ind.2007). In other words, Indiana Code section 35-50-2-1.3 "imposes no additional restrictions on the ability of trial courts to impose consecutive sentences." White v. State, 849 N.E.2d 735, 743 (Ind.Ct.App. 2006), trans. denied. We conclude that the trial court was legally permitted to order Pedraza's sentences to run consecutively. See Ind.Code § 35-50-1-2 (OWI causing death is a "crime of violence," for which the trial court may impose consecutive sentences, and for which there is no limitation on the aggregate sentence).

Conclusion
We conclude that the trial court properly entered a judgment of conviction and sentence for the OWI causing seriously bodily injury count. We further conclude that the trial court did not find an improper aggravating circumstance or abuse its discretion in finding the mitigating circumstances, and that Pedraza's sentence is not inappropriate given his character and the nature of his offense. Finally, we conclude that the trial court did not improperly order that Pedraza's sentences run consecutively.
Affirmed.
BRADFORD, J., concurs.
VAIDIK, J., concurs in result with separate opinion.
VAIDIK, Judge, concurring in result.
I concur in full with Parts I, III, IV, and V of the majority's opinion. However, for the reasons explained herein, I disagree with the majority's conclusion in Part II that the trial court properly found as an aggravating circumstance the two previous OWI convictions that also supported Pedraza's habitual substance offender finding.
The Indiana Supreme Court has held that the felony convictions that support a habitual offender finding cannot standing alone be relied upon as the aggravating factor of a prior criminal record to enhance a sentence. McVey v. State, 531 N.E.2d 458, 461 (Ind.1988) ("Inasmuch as the use of the gun was what raised the robbery to a Class B felony and the two previous felonies are what supported the habitual offender finding, they cannot standing alone be the aggravating circumstances to justify the enhanced sentence for the robbery." (emphasis added)); see also Waldon v. State, 829 N.E.2d 168, 182 (Ind.Ct.App. 2005), reh'g denied, trans. denied. The majority acknowledges this rule but posits that it does not affect the trial court's sentencing decision in this case because the trial court did not "enhance" Pedraza's sentence. The majority reasons that under the current advisory sentencing scheme, "a trial court's finding of an aggravating circumstance no longer constitutes an `enhancement' of a sentence, as *1094 the trial court is not required to use the advisory sentence." Maj. op. at 1088.
The majority rests its conclusion largely on our Supreme Court's statement in Jones v. State that "it is permissible for the trial court to consider the same prior offenses for both enhancement of the instant offense and to establish habitual offender status." 600 N.E.2d 544, 548 (Ind. 1992) (emphasis added). The majority apparently believes that the holdings in Jones and McVey can be reconciled based on a distinction between "enhancing" a sentencing and merely "considering" an aggravating circumstance. I believe such a distinction is illusory. If previous convictions could not justify a sentence increase standing alone, then why would it be proper to consider them along with other factors, as the majority suggests? Stated plainly, a bad aggravator is a bad aggravator.
I do not mean to suggest that Jones and McVey cannot be reconciled. I would simply note that the holding in Jones was borne out of two previous Supreme Court cases in which the defendants had criminal convictions in addition to the felony convictions supporting the habitual offender findings. See Criss v. State, 512 N.E.2d 858, 860 (Ind.1987) (noting that defendant had prior convictions for rape, armed robbery, burglary, robbery, confinement, and two counts of second degree burglary); Darnell v. State, 435 N.E.2d 250, 256 (Ind. 1982) (defendant had "history of criminal activity which dated back to juvenile offenses and included offenses in Ohio and Illinois in addition to the prior felonies used as the basis of the habitual offender count." (emphasis added)). These holdings are consistent with McVey in that the trial court in McVey did not rely upon any additional criminal history beyond the two felony convictions underlying the habitual offender finding.[8]See Hall v. State, 769 N.E.2d 250, 254-55 (Ind.Ct.App.2002) (distinguishing McVey because "Hall's instant sentence was not aggravated solely because of the prior convictions supporting the habitual offender determination."); see also Whaley v. State, 843 N.E.2d 1, 16 n. 11 (Ind.Ct.App.2006) (relying upon Hall and noting that the defendant's sentence "was not aggravated solely because of the prior convictions supporting the habitual offender determination."), trans. denied.
I would hold that the trial court abused its discretion in finding as an aggravating circumstance the same convictions supporting Pedraza's habitual offender finding. Nonetheless, because the other aggravating circumstances identified by the trial court are sufficient to support Pedraza's sentence, I concur in the result reached by the majority.
NOTES
[1] Sandra's maiden name does not appear in the record.
[2] The four counts enhancing the counts for OWI causing death, OWI causing serious bodily injury, and operating a motor vehicle with a BAC greater than .08 causing serious bodily injury were not submitted to the jury. Pedraza pled guilty to these counts following the jury verdicts.
[3] At the sentencing hearing, several of the State's witnesses commented on the fact that Pedraza had rejected the plea agreement, thereby forcing the victims' family and friends to go through a trial.
[4] We wish to note that Pedraza's convictions for OWI causing death were enhanced to Class B felonies from Class C felonies because he had a prior conviction. In Davis v. State, 851 N.E.2d 1264, 1267 (Ind.Ct.App.2006), trans. denied, another panel of this court held that where the defendant had only one prior OWI, and her conviction had been enhanced from a Class D felony to a Class C felony because of this conviction, the trial court's consideration of her prior OWI as an aggravating factor "was an improper double enhancement based on [the defendant's] prior conviction, and it cannot be considered a valid aggravator." The Davis court's reasoning was that "a fact that comprises a material element of the offense may not also constitute an aggravating circumstance to support an enhanced sentence." Id. (citing Stone v. State, 727 N.E.2d 33, 37 (Ind.Ct.App.2000)). Pedraza, on the other hand, had two previous convictions, and therefore his criminal history was more extensive than necessary to fulfill the element of his offense. Moreover, Davis was decided under the presumptive sentencing scheme, under which sentences were indeed "enhanced," and a trial court needed to find at least one aggravating circumstance in order to enhance a sentence. See Sherwood v. State, 702 N.E.2d 694, 699 (Ind.1998). As explained above, the trial court in Pedraza's case did not "enhance" his sentence based on the aggravating circumstances, and was allowed to order any legal sentence regardless of whether it found any aggravating circumstances.
[5] Whether or not a trial court would have abused its discretion under the presumptive sentencing scheme is not necessary to this opinion, and we decline to address the issue. See Waldon v. State, 829 N.E.2d 168, 182 (Ind.Ct.App.2005), trans. denied. In Waldon, another panel of this court discussed enhancements based on criminal history under the presumptive sentencing scheme. Waldon recognized that in Darnell v. State, 435 N.E.2d 250, 256 (Ind.1982), our supreme court concluded that the defendant's sentence was not manifestly unreasonable and noted that in finding the defendant's criminal history to be an aggravating circumstance, "the trial court considered more than just the two prior felonies used in the habitual offender count." The Waldon court went on to state, "whether Criss and Jones have altered the law so that a trial court may rely solely upon the felonies which support a habitual offender enhancement to also enhance a sentence because of criminal history is unclear." 829 N.E.2d at 182 n. 13. The Waldon court found it unnecessary to resolve that issue as the defendant in that case had convictions in addition to those used to establish his habitual offender status.
[6] We recognize that arrests and charges do not constitute evidence of criminal history. However, "[a] record of arrest, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State." Cotto v. State, 829 N.E.2d 520, 526 (Ind.2005). "Such information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." Id.
[7] Our supreme court granted transfer on April 17, 2007. Pedraza filed his brief on February 6, 2007, at which point the court of appeals' Robertson opinion was still good law.
[8] Regarding Jones, our Supreme Court's opinion does not reveal whether the defendant had any criminal convictions other than those used to establish his habitual offender status. 600 N.E.2d at 548.