## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 24 2020, 5:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Frank Jones
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Frank Jones, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | April 24, 2020 <br><br> Court of Appeals Case No. 19A-PC-357 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jane Woodward Miller, Judge <br><br> Trial Court Cause No. 71D01-1709-PC-36 |

**May, Judge.**

[1]     Frank Jones appeals the post-conviction court's denial of his successive petition for post-conviction relief.  As Jones' arguments presented before the post-conviction court were barred by laches, we affirm.

# Facts and Procedural History

[2]     The facts of Jones' underlying crimes and convictions were set forth in the opinion deciding his direct appeal:

> In July of 1990, Jimmy Poindexter lived with Charles Benion and his father, Sam Benion.  Sam, who lived in an apartment in the rear of the house, was the victim of a stabbing on July 8, and was hospitalized for treatment.  On the evening of July 10, Poindexter came home from work, bathed, ate, and fell asleep on the living room couch watching television.  Charles and Dalton Hinton were also in the house on July 10.  Charles went to his bedroom to watch television while Hinton watched television in the living room.
>
> Later that evening, Charles' brother (the defendant Jones) and a companion knocked on the door looking for Charles.  Hinton answered the door, let them in and said Charles was in his bedroom.  Jones walked over, knocked on Charles' door, and entered the room.  Jones and Charles then went into the kitchen to talk. Jones was very upset about the news of his father's stabbing and was angry with Poindexter for not preventing the stabbing.  After they talked a while in the kitchen, they returned to Charles' bedroom.  Jones told Charles he was going to the hospital to see their father.  Charles closed his bedroom door and lay back down.
>
> Jones and his companion started out the door, but then Jones returned while his companion remained outside.  Jones

proceeded to awaken Poindexter by shaking him. Jones called Poindexter a few names and asked him, "Why would you let my father get hurt?" Poindexter denied knowing anything about the stabbing until after it happened, but Jones continued to push Poindexter and call him names. Jones pulled out a gun and shot Poindexter.

Charles heard the shots and opened the bedroom door. As he opened the door, Poindexter fell into the bedroom. Jones walked over to Poindexter, placed his foot on Poindexter's shoulder to hold him down, said, "I stole your wife" and shot Poindexter again.

Jones then walked to the chair where Hinton was seated and shot him in the back of the head. Hinton was shot a total of four times. Jones then ran away.

Poindexter's mother, Catherine Poindexter, who lived across the street, heard the shots fired. After hearing the first shots, she stepped on her porch and saw Jones shoot Hinton. She watched Jones run down the street and called 911.

Poindexter spent three months in the hospital. He lost the hearing in one ear and is paralyzed on one side of his mouth. Two bullets remain in his skull. Hinton sustained bullet wounds to his head and arms, but never lost consciousness. He spent two to three weeks in the hospital, and bullets remain in him as well.

On July 12, 1990, Jones was charged by information with two counts of attempted murder. On October 15, 1990, the State charged Jones with being a habitual offender and amended this information on January 10, 1991. Jones was arrested in Davenport, Iowa, in October of 1990, while using the name of his brother, William Benion.

*Jones v. State*, 600 N.E.2d 544, 546 (Ind. 1992), *superseded by statute unrelated to this appeal as stated by Pedraza v. State*, 887 N.E.2d 77, 80 (Ind. 2008). After a jury trial, the trial court entered convictions against Jones for two counts of Class A felony attempted murder[1] and adjudicated Jones an habitual offender.[2] On April 29, 1990, the trial court sentenced Jones to fifty years each for the attempted murder convictions, to be served concurrently. Jones' sentence was enhanced by thirty years for his habitual offender adjudication, for an aggregate sentence of eighty years.

[3] Jones appealed his convictions and sentence to our Indiana Supreme Court. He argued that the trial court "abused its discretion in controlling the scope of re-direct examination" of one of the victims and of a homicide investigator and that his "sentence is manifestly unreasonable." *Id*. On October 14, 1992, our Indiana Supreme Court affirmed Jones' convictions and sentence. *Id*. at 549.

[4] On June 16, 1994, Jones filed a petition for post-conviction relief. The Indiana State Public Defender entered an appearance in the matter, but it withdrew its representation in 1997. On June 30, 2000, the post-conviction court denied Jones' petition for post-conviction relief. Jones appealed the denial of his petition for post-conviction relief but did not request the court's records to be

---

[1] Ind. Code § 35-42-1-1 (1989) (murder); Ind. Code § 35-41-5-1 (1977) (attempt).

[2] Ind. Code § 35-50-2-8 (1990).

sent to the Court of Appeals. Our court dismissed Jones' appeal of the denial of his petition for post-conviction relief on November 30, 2000.

[5] In 2013, Jones filed a motion to correct erroneous sentence, alleging the trial court improperly attached the habitual offender enhancement to both of his Class A felony attempted murder convictions. The post-conviction court agreed, though it noted that the "sentencing court explicitly stated that the total sentence was to be eighty years[.]" (App. Vol. II at 58.) On October 3, 2013, the post-conviction court amended the original sentencing order to attach the habitual enhancement to Jones' first conviction of Class A felony attempted murder.

[6] On September 11, 2017, our court granted Jones leave to file a successive petition for post-conviction relief. Our order limited Jones' claims for relief "to the issue of ineffective assistance of trial counsel separate from the issues of failure to consult or failure to investigate." (*Id.* at 59.) Jones filed his successive petition for post-conviction relief on September 13, 2017, and amended his petition on March 20, 2018. On August 24, 2018, the post-conviction court held an evidentiary hearing. Jones argued his trial counsel was ineffective because he did not challenge the trial court's ruling on a motion in limine filed by the State to limit Charles Benion's proposed testimony that he thought Jones was in Iowa on the day of the crime. The trial court had granted the State's motion in limine because Benion's testimony amounted to an alibi, and Jones had not filed an intention to produce an alibi with the trial court.

[7] Jones presented no evidence and called no witnesses at the successive post-conviction evidentiary hearing on August 24, 2018. He testified regarding the State's affirmative defense of laches. The State presented multiple exhibits related to its affirmative defense of laches, including death certificates for one victim and one witness, an affidavit regarding the scarcity of available evidence in police records, and an affidavit indicating the other victim could not be located. The post-conviction court also took judicial notice of all records from Jones' original trial. On October 24, 2018, the post-conviction court denied Jones' successive petition for post-conviction relief, finding Jones' trial counsel was not ineffective and that Jones' claim was barred by laches. On November 11, 2018, Jones filed a motion to correct error, which was deemed denied on January 7, 2019.

# Discussion and Decision

## 1. Standards of Review

### *A. Pro se Litigant*

[8] At the onset, we note Jones appeared before the trial court and in this appeal as a *pro se* litigant. It is well settled that *pro se* litigants are held to the same standards as licensed attorneys, and thus they are required to follow procedural rules. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*.

### B. Successive Post-Conviction Proceedings Review

[9]     Post-conviction proceedings afford petitioners a limited opportunity to raise issues unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). As post-conviction proceedings are civil in nature, the petitioner must prove his grounds for relief by a preponderance of the evidence. *Id.* A party appealing a negative post-conviction judgment must establish that the evidence is without conflict and, as a whole, unmistakably and unerringly points to a conclusion contrary to that reached by the post-conviction court. *Id.* Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but "the findings and judgment will be reversed only upon a showing of clear error - that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quoting *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997), *cert. denied*, 523 U.S. 109 (1998)), *cert. denied*, 530 U.S. 830 (2001).

[10]    A petitioner is entitled to only one post-conviction opportunity to raise the issue of ineffective assistance of counsel. *Daniels v. State*, 741 N.E.2d 1177, 1185 (Ind. 2001). Claims of ineffective assistance already decided adversely to the petitioner are barred in successive post-conviction proceedings as *res judicata*, which prevents the re-litigation of issues. *Matheney v. State*, 834 N.E.2d 658, 662 (Ind. 2005). The doctrine of *res judicata* does not bar an action if "the initial decision was clearly erroneous and would work manifest injustice," *Wallace v.*

*State*, 820 N.E.2d 1261, 1263 (Ind. 2005), or if there is newly-discovered evidence. *Daniels*, 741 N.E.2d at 1185.

# 2. Laches

[11] The equitable doctrine of laches "operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done." *Kirby v. State*, 822 N.E.2d 1097, 1100 (Ind. Ct. App. 2005), *trans. denied*. The State is required to prove the defense of laches by a preponderance of the evidence. *McCollum v. State*, 671 N.E.2d 168, 170 (Ind. Ct. App. 1996), *affirmed on reh'g*, 676 N.E.2d 356 (Ind. Ct. App. 1997), *trans. denied*. To prove laches, the State must show both: (1) the petitioner unreasonably delayed in seeking relief, and (2) the State has been prejudiced by the delay. *Id*.

### A. Unreasonable Delay

[12] It is well-settled that

> [a] petitioner can seldom be found to have unreasonably delayed unless he has knowledge of a defect in his conviction. Facts from which a reasonable finder of fact could infer petitioner's knowledge may support a finding of laches. Repeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are all facts from which the fact finder may infer knowledge.

*Id*. at 170-71 (internal citations omitted). Jones argues laches does not apply because the post-conviction court made a clerical error in its 2000 denial of Jones' petition for post-conviction relief, which Jones alleges resulted in this

court's dismissal of his appeal of that order. Thus, Jones maintains, the State is to blame for the seventeen-year delay between his petition for post-conviction relief and his successive petition for post-conviction relief.

[13] The order acknowledging the clerical error was entered in 2016, in response to Jones' attempt to file a belated appeal of the denial of the post-conviction court's 2000 denial of his petition for post-conviction relief. The 2016 order noted the post-conviction court's order was entered on June 30, 2000, not June 20, 2000. (App. Vol. II at 109.) Jones testified before the post-conviction court that he did not know the process to get the court records at the time of his 2000 appeal, and allegedly the trial court did not respond to his request, but that he did not follow up on his request because he "didn't know anything about the law at the time." (Tr. Vol. II at 15.)

[14] When this court dismissed Jones' appeal on November 30, 2000, it did so because Jones had not filed the record of the proceeding or a motion for extension of time to do so. Jones did not respond to that dismissal until 2016, when he filed a motion to file a belated appeal with the post-conviction court. He claims his lack of knowledge of the law caused the delay. However, it is well-settled that a *pro se* litigant is held to the same standard as a licensed attorney. *See Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016) (*pro se* litigants held to same legal standards are licensed attorneys), *reh'g denied*, *trans. denied*. Thus, Jones' argument fails.

Further, Jones' claim, that his trial counsel was ineffective for failing to challenge the trial court's grant of the State's motion in limine excluding Benion's testimony that he believed Jones was in Iowa at the time of the crime, has been available since Jones' trial. Thus, at the least, Jones has delayed making the claim for seventeen years and, at the most, has delayed doing so for twenty-six years. Such a delay is unreasonable by any standard. *See Jent v. State*, 120 N.E.3d 290, 293 (Ind. Ct. App. 2019) (fifteen-year delay in filing post-conviction petition unreasonable based on case law holding ten-year and sixteen-year delays unreasonable), *trans. denied*.

### B. Prejudice to the State

"To prove prejudice, the State must establish a reasonable likelihood that a successful reprosecution has been materially diminished by the petitioner's delay." *Lile v. State*, 671 N.E.2d 1190, 1195 (Ind. Ct. App. 1996). "The amount of prejudice is directly correlated to the length of the delay." *Id*. at 1196. "Prejudice may result in litigation by the mere passage of time because witnesses are dispersed, memories fade, and records are lost." *Id*. Jones argues the State did not prove it was prejudiced by any delay in Jones' filing of the current successive petition for post-conviction relief because "the [S]tate failed to present evidence that established any change in the witnesses [sic] testimony[.]" (Br. of Appellant at 15.)

In support of his argument, Jones relies on our Indiana Supreme Court's holding in *Armstrong v. State*, 747 N.E.2d 1119 (Ind. 2001). In Armstrong, the trial court convicted Armstrong of murder in 1996. Armstrong filed a petition

for post-conviction relief in 1999. The State argued Armstrong's petition was barred by the doctrine of laches because one of the State's main witnesses was in another jurisdiction and unlikely to return to testify again against Armstrong, and two other witnesses did not have incentive in the form of plea bargains to testify on the State's behalf. *Id*. at 1120-1. The trial court denied Armstrong's petition for post-conviction relief based on the doctrine of laches, and our court affirmed. *Id*. at 1120.

[18] In its opinion, our Indiana Supreme Court rejected the State's arguments regarding the unavailability of its main witness, noting that the State had not exhausted all avenues of procuring his testimony, such as asking the witness if he would voluntarily submit to Indiana's jurisdiction and testify in a possible retrial. Further, the Court noted that the State had not presented evidence that the other two witnesses would have changed their testimony at a retrial. *Id*. at 1121. Based thereon, our Indiana Supreme Court held, "the alleged prejudice claimed by the State to support its defense of laches is neither attributable to nor materially enhanced by Armstrong's three-year delay in filing his petition for post-conviction relief." *Id*. at 1122.

[19] The holding in *Armstrong* is inapposite. Here, Jones delayed at least seventeen, if not twenty-six, years before raising a post-conviction claim regarding his trial counsel's failure to challenge a motion in limine which occurred during his trial. Additionally, the State presented evidence that retrial would be very difficult – one victim and one witness were dead, the other victim could not be located despite several efforts, and all physical evidence of the crime was

destroyed long ago. Based thereon, we conclude the State was substantially prejudiced by Jones' delay and thus the doctrine of laches applies. *See Oliver v. State*, 843 N.E.2d 581, 587 (Ind. Ct. App. 2006) (State prejudiced by ten-year delay because certain witnesses could not be located), *trans. denied*; *and see Balderas v. State*, 116 N.E.3d 1141, 1144 (Ind. Ct. App. 2018) (State prejudiced by twelve-year delay because the physical evidence of the crime had been destroyed or returned).

# Conclusion

[20] Jones has not demonstrated the court erred by determining his successive petition for post-conviction relief was barred by the doctrine of laches. Accordingly, we affirm the post-conviction court's denial of his successive petition for post-conviction relief.

[21] Affirmed.

Crone, J., and Pyle, J., concur.